NO.   93-127

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

BOZEMAN DAILY CHRONICLE,

      Plaintiff, Respondent, and
      Cross-Appellant,

  -vs-

CITY OF BOZEMAN POLICE DEPARTMENT,

      Defendant, Appellant, and
      Cross-Respondent,

  and

GALLATIN COUNTY SHERIFF'S DEPARTMENT,

      Defendant and Respondent.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
              In and for the County of Gallatin,
              The Honorable Thomas C. Honzel, Judge presiding.


COUNSEL OF RECORD:

      For  Plaintiff/Cross-Appellant:

      James P. Reynolds and David K. W. Wilson, Jr.,
      Reynolds, Motl, Sherwood & Wright, Helena, Montana

      For  Defendant/Appellant:

      Paul J. Luwe, Bozeman City Attorney, Bozeman,
      Montana

      For  Defendant/Respondent:

      Mike Salvagni, Gallatin County Attorney, Bozeman,
      Montana

Submitted on Briefs:  July 29, 1993
          Decided:  August 27, 1993

FILED

AUG 27 1993

Filed:

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Memorandum and Order of the Eighteenth Judicial District Court. Defendant City of Bozeman Police Department (City) appeals that portion of the judgment which requires the City to pay the plaintiff's attorney's fees. The plaintiff Bozeman Daily Chronicle (Chronicle) appeals that portion of the judgment which denies its request for the release of investigative documents. We affirm the award of attorney's fees and remand with instructions to the District Court with respect to the release of investigative documents.

The issues on appeal are as follows:

1. Must the investigative documents requested by the Chronicle be released by the City and the Gallatin County Sheriff's Department (Sheriff)?

2. Is the Chronicle entitled to an award of its attorney's fees?

On or about March 8, 1992, a cadet at the Montana Law Enforcement Academy (Academy) in Bozeman, Montana, made an allegation of sexual intercourse without consent against an off-duty Bozeman city police officer (police officer). The Sheriff conducted an investigation and made a request for prosecution to the Gallatin County Attorney's Office.

The Gallatin, County Attorney recused his office and referred the case to the Montana Department of Justice, County Prosecutor Services Bureau. That office referred the case to the Missoula County Attorney. The police officer was placed on administrative

leave with pay pending the outcome of the investigation.

The Missoula County Attorney, Robert Deschamps, III, and two of his deputies reviewed the file and conducted follow-up interviews with the alleged victim. On April 20, 1992, Mr. Deschamps sent a letter to John Connor, Chief of the County Prosecution Services Bureau. Mr. Deschamps concluded that no criminal charges should be filed. However, Mr. Deschamps stated that it was the collective opinion of him and his deputies that "[the police officer] should not be allowed to continue working as a law enforcement officer because of inappropriate use of his position in relation to his contacts with women." On April 21, 1992, the police officer resigned.

Approximately a week after the incident at the Academy which prompted the investigation, Marlo Milliken, a Chronicle reporter, was informed by Greg Noose, the administrator of the Academy, that an "incident" had occurred. Ms. Milliken went to the Sheriff's Office, where she was given some general information concerning the incident and was shown the initial offense report.

MS. Milliken and the editor of the Chronicle, Bill Wilke, attempted to obtain the police officer's name and the investigative documents regarding the incident from the City and from the Sheriff. The City and the Sheriff refused to turn over this information to the Chronicle, claiming that it was confidential criminal justice information.

On April 30, 1992, the Chronicle filed a Complaint and a Petition for an Order to Show Cause (Petition) as to why the police officer's name and the investigative documents should not be

3

released. The Complaint and Petition alleged that the failure to release that information violated Article II, Section 9 of the Montana Constitution. The Chronicle also requested its attorney's fees incurred in enforcing its constitutional rights, pursuant to § 2-3-221, MCA.

A hearing on the Petition was held on May 22, 1992. At the close of the hearing, the District Court ruled from the bench that the name of the police officer should be released, citing this Court's decision in Great Falls Tribune v. Cascade County (1989), 238 Mont. 103, '775 P.2d 1267. The District Court took under advisement the matter of the release of the investigative documents and award of attorney's fees and ordered the parties to file briefs by May 29, 1992.

On July 31, 1992, the District Court entered a Memorandum and Order requiring the City and the Sheriff to provide the Chronicle with a copy of the initial offense report but denying the Chronicle's request for investigative documents. The reason given for this ruling by the District Court was that the demands of individual privacy of the alleged victim and witnesses exceeded the merits of public disclosure. This Memorandum and Order did not address attorney's fees and, on September 3, 1992, the Chronicle moved the District Court to amend its Order to include an award of such fees.

All parties briefed the issue of attorney's fees and, on October 26, 1992, the District Court ordered that the City pay the Chronicle's reasonable attorney's fees in bringing its action, pursuant to § 2-3-221, MCA. Thereafter, the Chronicle and the City

4

stipulated to a reasonable amount of attorney's fees, with the City reserving the right to object to the award of attorney's fees itself. On December 8, 1992, a final judgment in this case was entered. The City appealed the award of attorney's fees and the Chronicle cross--appealed the denial of the release of the investigative documents.

Our standard of review relating to discretionary trial court rulings, such as awarding attorney's fees, is whether the trial court abused its discretion. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 604. Our standard of review relating to conclusions of law is whether the trial court's interpretation of the law is correct. Steer, 803 P.2d at 603.

I — RELEASE OF INVESTIGATIVE DOCLJMENTS

In addition to the name of the police officer, the Chronicle sought release of the investigative documents prepared in connection with the alleged sexual assault by the police officer against an Academy cadet. The District Court determined that such documents were primarily confidential criminal justice information and refused to release the same to the Chronicle.

Criminal justice information under the Montana Criminal Justice Information Act of 1979 (the Act), §§ 44-5-101, et seq., MCA, is classified as public criminal justice information and confidential criminal justice information.

Public criminal justice information means information:

(a) made public by law:
(b) of court records and proceedings*
(c) of convictions, deferred sentences, and deferred prosecutions;
(d) of postconviction proceedings and status;

5

**(e)** originated by a criminal justice agency, including:
    **(i)**        initial offense reports;
    (ii)       initial arrest records;
    (iii)     bail records: and
    **(iv)**      daily jail occupancy rosters;
(f) considered necessary by a criminal justice agency to secure public assistance in the apprehension of a suspect; or
**(g)** statistical information.

Section **44-5-103(12)**, MCA.

Confidential criminal justice information means:

**(a)** criminal investigative information:
**(b)** criminal intelligence information:
(c) fingerprints and photographs:
**(d)** criminal justice information or records made confidential by law; and
(e) any other criminal justice information not clearly defined as public criminal justice information.

Section **44-5-103(3)**, MCA.

With some qualifications, public criminal justice information may be disseminated without restriction. Section **44-5-301**, MCA. The dissemination of confidential criminal justice information, on the other hand, is restricted

> to criminal justice agencies, to those authorized by law to receive it, and to those authorized to receive it by a district court upon a written finding that the demands of individual privacy do not clearly exceed the merits of public **disclosure[.]**

Section 44-5-303, MCA.

In this case, because the Chronicle is not a criminal justice agency, the only way that the Chronicle can obtain access to the confidential criminal justice information at issue is (1) if it is authorized by law to receive such information; or (2) upon order by a district court after the statutory written finding is made.

A. Authorized by Law

Article II, Section 9 of the Montana Constitution, the "Right

6

to Know" provision, provides:

> No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

We have previously held that a person is "authorized by law" to receive confidential criminal justice information on the basis of that constitutional provision. Allstate Ins. Co. v. City of Billings (1989), 239 Mont. 321, 325, 780 P.2d 186, 188.

In Allstate, an insurance company sought police investigation files relating to the death of its insured. The insured, who was HIV positive at the time of his death, died of an intravenous drug overdose. Allstate, 780 P.2d at 187. In his application with the insurance company, the insured denied ever being treated for AIDS and denied prior illegal drug use. Allstate, 780 P.2d at 186-87. The insurance company believed that the investigative files would assist it in determining whether the insured had misrepresented facts in his insurance application, which would preclude coverage. Allstate, 780 P.2d at 187.

The trial court interpreted § 44-5-303, MCA, to mean that "authorized by law" required specific authorization by statute. We concluded that the trial court's interpretation was too narrow and held that the word "law" includes constitutional law as well as statutory law. Allstate, 780 P.2d at 188.

> Accordingly, one is "authorized by law" to receive criminal justice information by the Right to Know provision of the Constitution. The only limitation on the right to receive this information is the constitutional right to privacy.

7

<u>Allstate,</u> 780 P.2d at 188.

In accordance with <u>Allstate,</u> we reaffirm that a person -- in this case, the Chronicle -- is "authorized by law" to receive confidential criminal justice information under the Right to Know provision of the Montana Constitution, qualified only by Article II, Section 10, of the Constitution, the "Right to Privacy" provision, which provides:

> The right of individual privacy is essential to the well being of a free society and shall not be infringed without a showing of a compelling state interest.

While the Chronicle has a right to know under the Constitution and is, therefore, "authorized by law" to receive the investigatory documents at issue, our inquiry must not stop there. We must, of necessity, also consider the constitutional limitation of the right to privacy on the Chronicle's right to know.

### B. Proper Showing to Receive Information

The public's right to know and the individual's right to privacy inevitably conflict in cases involving a request for confidential criminal justice information under the Act. Accordingly, in view of the purpose to protect individual privacy underpinning the Act, as set forth in § 44-5-102, MCA, "it is incumbent upon a party to make a proper showing in order to be eligible to receive such specific confidential information." <u>Allstate,</u> 780 P.2d at 189.

In this case, the Chronicle maintains that its right to the confidential criminal justice information at issue exceeds the privacy rights of the police officer because the police officer was accused of improper sexual activity with an Academy cadet and by

8

reason of the conclusion of Mr. Deschamps that "because of [his] inappropriate use of his position in relation to contacts with women," the police officer should not be allowed to continue working in law enforcement.

The Chronicle contends that it has not asked for the names of the alleged victim or witnesses and that the privacy rights of these people can be protected under a protective order.

In order to evaluate whether the Chronicle has met its burden and has made a proper showing of entitlement to receive the investigatory documents at issue, we looktotwo previous decisions of this Court. In Great Falls Tribune, we utilized the now-familiar two-part test to determine whether an individual has a protected privacy interest under Article II, Section 10, of the Montana Constitution. This test requires answering two queries: first, we determine whether the person involved has a subjective or actual expectation of privacy: next, we evaluate whether society is willing to recognize that expectation as reasonable. Great Falls Tribune, 775 P.2d at 1268.

In Great Falls Tribune, holding that "[w]hatever privacy interest the officers have in the release of their names as having been disciplined . . . is not one which society recognizes as a strong right," we stated that "it is not good public policy to recognize an expectation of privacy in protecting the identity of a law enforcement officer whose conduct is sufficiently reprehensible to merit discipline." Great Falls Tribune, 775 P.2d at 1269. We observed that:

law enforcement officers occupy positions of great

9

> public trust . . . [and] . . . the public has a right to
> know when law enforcement officers act in such a manner
> as to be subject to disciplinary action. The public
> health, safety, and welfare are closely tied to an honest
> police force. The conduct of our law enforcement
> officers is a sensitive matter so that if they engage in
> conduct resulting in discipline for misconduct in the
> line of duty, the public should know. We conclude that
> the public's right to know in this situation represents
> a compelling state interest.

Great Falls Tribune, 775 P.2d at 1269.

In that case, we only required the release of the identities of the police officers who were terminated and those who resigned, declining to rule that the entirety of any personnel files need also be revealed. Similarly, in the instant case, the District Court required only the release of the police officer's name (along with the initial offense report, which was public criminal justice information).

It is important to point out, however, that in Great Falls Tribune, the newspaper's petition only sought the release of the names of the law enforcement officers. Additionally, since our decision in that case, we have had occasion to consider and rule upon a request for the release of a report detailing the results of an investigation of a public official's alleged sexual harassment of a city employee.

In Citizens to Recall Mayor v. Whitlock (1992), 255 Mont. 517, 844 P.2d 74, the Hamilton City Judge filed a complaint with the Human Rights Commission against the City of Hamilton and the mayor, alleging that the mayor sexually harassed and discriminated against her. The City hired an investigator to inquire into the allegations, and the investigator prepared a report with his

10

findings. Whitlock, 844 P.2d at 76. Thereafter, the City entered into negotiations and, ultimately, into a settlement with the City Judge. The City, however, refused to release the investigative report to the public. Whitlock, 844 P.2d at 76. A citizens group in Hamilton filed a complaint in the district court, requesting the district court to order the City to release copies of the investigator's report. After a hearing, the district court held that an elected official had no reasonable expectation of privacy when accused of misconduct in office and ordered the release of the investigator's report. Whitlock, 844 P.2d at 76.

On appeal, we found that the investigator's report did not discuss protected information such as personnel records or job performance evaluations. Whitlock, 844 P.2d at 78. Rather, the report, while not generated by a criminal justice agency (§ 44-5-103(7), MCA), and while not criminal justice information (§ 44-5-103(8), MCA), was the result of an investigation into the mayor's alleged misconduct related to the performance of his official duties. Applying the two-part test, we held that the mayor's expectation of privacy was unreasonable as a matter of law. Whitlock, 844 P.2d at 77-78. We also stated that the merits of public disclosure were great because public funds were used to settle the dispute. Whitlock, 844 P.2d at 78. Therefore, we held that the public's right to know outweighed the mayor's right to privacy. Whitloclc, 844 P.2d at 78.

Our decision in Whitlock was based on two reasons that apply equally to police officers, given our discussion in Great Falls Tribune regarding the position of great public trust which law

11

enforcement officers occupy. Specifically, the nature of the office [job] mandates that the office holder [officer] be properly subject to public scrutiny in the performance of his duties, and the public has the right to be informed of the actions and conduct of such office holders [officers]. Whitlock, 844 P.2d at 77. In Whitlock, we pointed out that allegations of sexual misconduct went directly to the official's ability to properly carry out his duties and, therefore, should not be withheld from public scrutiny. Whitlock, 844 P.2d at 78.

Similarly, in the instant case and notwithstanding that the police officer was off-duty at the time of the alleged incident, the nature of the alleged misconduct ran directly counter to the police officer's sworn duty to uphold the law, to prevent crime, and to protect the public. We note the allegations of sexual misconduct by the police officer; the fact that, before he resigned, the City planned to take further disciplinary action against the police officer regardless of whether he was criminally charged; and the conclusion of Mr. Deschamps that the police officer should not have been allowed to continue working as a law enforcement officer because of inappropriate use of his position in relation to his contacts with women. We hold that, notwithstanding the police officer's resignation, such alleged misconduct went directly to the police officer's breach of his position of public trust; that, therefore, this conduct is a proper matter for public scrutiny; and that, accordingly, the Chronicle has met its initial burden to make a proper showing to receive the confidential criminal justice information at issue.

C. Right to Privacy

12

Once a party authorized by law to receive confidential criminal justice information has met his initial burden to make a proper showing to receive that information, it then becomes incumbent upon the agency or person in possession of the information to demonstrate why all or portions thereof should not be released because the rights of individual privacy outweigh the merits of public disclosure.

In Allstate, we required the district court to balance the competing right to know and right to privacy to determine what, if any, information should be given to the party requesting the information from the government. Allstate, 780 P.2d at 189.

While, as indicated above, the police officer's right to privacy in the investigative documents at issue does not clearly exceed the public's right to know, we must, nevertheless, also consider the competing privacy rights of other persons involved in the investigation of the alleged sexual assault. The alleged victim and possibly witnesses and other persons have constitutional privacy rights that must be considered in the release of the investigative documents at issue. As we pointed out in Allstate:

> Obviously in certain situations investigatory material must be shielded from public review. Victims of sex crimes, for example, may have a legitimate expectation of privacy. On the other hand, suspects may have such an expectation in certain circumstances because criminal investigations occasionally result in the designation of the innocent as suspects, particularly in the early stages of investigation.

Allstate, 780 P.2d at 188.

Similarly, in Engrav v. Cragun (1989), 236 Mont. 260, 769 P.2d 1224, we reemphasized that the public's right to know is not

13

absolute and that the privacy rights of individuals, which, in Montana, are more substantial than such rights guaranteed in the United States Constitution, must be fully respected. Enarav, 769 P.2d at 1229. In that case, applying the two-part test, we held that a student's, request for a broad category of confidential criminal justice information for a research project was beyond the reach of the public sector and that the public's right to know was outweighed by the right of privacy protected by the Act and the Montana Constitution. Engrav, 769 P.2d at 1227-29.

In the instant case, the District Court ruled that the alleged victim and witnesses have an expectation of privacy which exceeds the merits of public disclosure. We agree. In this case, especially in view of the fact that criminal charges were not filed, the victim of the alleged sexual assault and the witnesses involved in the investigation have a subjective or actual expectation of privacy which society is willing to recognize as reasonable. Accordingly, the privacy rights of the alleged victim and of the witnesses outweigh the public's right to know and must be accorded adequate protection in the release of any of the investigative documents at issue.

While not directly related to privacy concerns, we also pointed out in Encrrav that public exposure of law enforcement files relating to ongoing criminal investigations would have a disastrous effect upon law enforcement agencies in the performance of their duty to protect the lives, safety and property of persons within their jurisdictions and would have the potential effect of allowing criminals and their allies to track the progress of investigations

14

into their activities. Engrav, 769 P.2d at 1227. Here, a criminal investigation will not be compromised as the investigation of the alleged incident is not ongoing. It was determined that no criminal action would be pursued against the police officer; the investigation has terminated and he has resigned.

D. In Camera Inspection and Protective Order

Given our holding that the Chronicle is authorized by law and has made a proper showing to receive the investigative documents at issue: that the privacy rights of the police officer in such information do not outweigh the public's right to know; and that the privacy rights of the alleged victim and witnesses in such information do outweigh the public's right to know, we must also address the proper method of giving effect to the public's right to know about the conduct of the police officer, while, at the same time, protecting the rights to privacy of the alleged victim and witnesses involved in the investigation of this case.

In Allstate, we spelled out the proper procedure to effect the protection of the privacy rights of persons who are legitimately entitled to such protection under the Constitution and under the Act while, at the same time, balancing the public's competing right to know as set forth above. Specifically, we required the district court to conduct an in camera inspection of the documents at issue in order to determine what material could properly be released, taking into account and balancing the competing interests of those involved, and conditioning the release of information upon limits contained within a protective order. Allstate, 780 P.2d at 189.

While the Chronicle has not requested the names of the alleged

15

victim and witnesses, the above procedure should, nevertheless, be utilized in this case. Here, there is no indication from the record that the District Court reviewed the investigative documents requested by the Chronicle. The District Court simply ruled that the investigative documents could not be released.

A review of such documents is, however, essential in determining whether or not the privacy interests of the victim and witnesses can be protected while disseminating the remainder of the information. The District Court's failure to review the documents at issue and its subsequent refusal to release any of them to the Chronicle, while understandable because of the limited information requested and released in Great Falls Tribune, was, nevertheless, error, given our discussion in that case of the unique position of police officers and our subsequent holding in Whitlock.

Accordingly, we remand this case to the District Court with instructions to conduct an in camera inspection of the investigative documents at issue in order to determine what material can be released to the Chronicle. To the extent that they have not already had an opportunity to do so, and while keeping in mind our application of Great Falls Tribune and Whitlock to this case, the City and the Sheriff should be given the opportunity to demonstrate why all or portions of the investigative documents should not be released because the rights of individual privacy outweigh the merits of public disclosure. The Chronicle should be given as much information as possible while maintaining the privacy rights of the alleged victim and witnesses. If, on remand, the District Court determines that the privacy rights of other persons

16

involved in this case, besides the police officer, also merit protection under the two-part test, then those persons' privacy rights should be protected, as well. To the extent the District Court deems necessary, the release of any information should be conditioned upon limits contained within a protective order,

## II - AWARD OF ATTORNEY'S FEES

The District. Court awarded the Chronicle its attorney's fees against the City. This award was based upon § 2-3-221, MCA, which provides:

> A plaintiff who prevails in an action brought in district court to enforce his rights to know under Article II, Section 9 of the Montana Constitution may be awarded his costs and reasonable attorney fees.

This section is discretionary. See Associated Press v. Bd. of Pub. Educ. (1991), 246 Mont. 386, 804 P.2d 376.

In the instant case, the Chronicle's complaint alleged that the refusal of the City and Sheriff to release the police officer's name and the investigative documents violated Article II, Section 9 of the Montana Constitution. The Chronicle prevailed in obtaining the name of the police officer involved, and therefore an award of attorney's fees is within the purview of § 2-3-221, MCA.

The City, nevertheless, argues that it should not have to pay attorney's fees because it complied with § 44-5-303, MCA, and the directive of Allstate. The City states that it is faced with Hobson's choice: if it releases investigative documents upon request, it runs the risk of invasion of privacy lawsuits, whereas if it does not release the demanded documents, it faces paying attorney's fees if a plaintiff prevails in obtaining such

17

information under the Right to Know provision of the Constitution.

The City bases its argument on the proposition that the Chronicle is not "authorized by law" to receive confidential criminal justice information and that it becomes eligible to receive such information only when so authorized by a district court upon a written finding that the demands of individual privacy do not clearly exceed the merits of public disclosure. The City argues that the latter language was added to § 44-5-303, MCA, by the 1991 Legislature in response to our decision in Allstate.

In effect, the City maintains that the amendment to that statute requires a lawsuit and order from the district court each time there is a request for confidential criminal justice information under the Act, and that, in having to comply with the statutorily mandated procedure, it should not, thereafter, be required to pay attorney's fees if a requesting party prevails in obtaining the information demanded.

While we appreciate the damned-if-you-do, damned-if-you-don't choice which criminal justice agencies face in these types of cases, nevertheless, the City's argument must fail. We held in Allstate, and reaffirm in this case, the principle that one is "authorized by law" to receive criminal justice information by the Right to Know provision of the Constitution. As we pointed out in the former case, the Right to Know provision of the Constitution is "self-executing" -- that is, legislation is not required to give it effect.

> The clear language contained within Article II, Section
> 9, indicates that there was no intent on the part of the
> drafters to require any legislative action in order to

18

> effectuate its terms.

> The legislature does not have the power to provide through the passage of statute who can exercise this right unless it finds that such curtailment is necessary to protect the right of individual privacy. Accordingly, any interpretation of § 44-5-303, MCA, which requires specific legislative authorization to review criminal justice information would render the statute unconstitutional.

Allstate, 780 P.2d at 188-89.

We have reviewed the legislative history associated with the 1991 amendment to § 44-5-303, MCA, and are unable to locate any direct reference to our Allstate decision. We do note that one proponent of the bill, John MacMaster, stated that "[w]ithout this [the amendment] in there, the District Court cannot allow someone to look at [the information]."

While the legislature may have determined that it was necessary or advisable to provide a classification of persons eligible to receive criminal justice information, i.e., those authorized by court order and a written finding, the fact remains that one is still "authorized by law" to receive criminal justice information by the Right to Know provision of the Constitution, and no further statutory authority is required to give that constitutional right effect. The Chronicle premised its request on its right to know under Article II, Section 9, and not on the provision of § 44-5-303, MCA, requiring a court order and written finding. Although the legislature amended § 44-5-303, MCA, it nevertheless did not repeal or modify the district court's discretionary authority to award attorney's fees under § 2-3-221, MCA.

19

Furthermore, and recognizing that the City and the Sheriff acted conservatively in a good faith effort to comply with the Act and our decision in Allstate, we nevertheless held in Associated Press that such motives will not preclude a discretionary award of attorney's fees under § 2-3-221, MCA. Associated Press, 804 P.2d at 380. As in that case, here, the public benefits from receiving full disclosure of relevant information, and will benefit because of the Chronicle's efforts. By awarding attorney's fees against the City, the cost of litigation is properly spread among the beneficiaries.

Finally, the City urges us to limit § 2-3-221, MCA, to actions under the Open Meetings Law, codified at Title 2, Chapter 3, Part 2, MCA. While that argument has some superficial appeal given the fact that § 2-3-221, MCA, is found in the Open Meetings Law, nevertheless, the plain language of the statute militates against the City's position.

Section 2-3-221, MCA, allows a discretionary award of attorney's fees when a plaintiff prevails in its rights under Article II. Section 9 of the Constitution. That Article and Section guarantee the right of the public to observe deliberations and examine documents. Accordingly, unless and until the legislature repeals or modifies § 2-3-221, MCA, we decline to limit the plain meaning of that statute to the interpretation urged by the City.

Because the Chronicle's complaint was grounded in the Montana Constitution, and because the Chronicle prevailed in this action, the District Court's award of attorney's fees is affirmed.

20

Attorney's fees on appeal are also allowable and should be determined and awarded on remand.

REMANDED to the District Court for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

21