No. 03-506

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 17

ANTOINETTE SVALDI,

Plaintiff and Appellant,

v.

ANACONDA-DEER LODGE COUNTY,
and ANACONDA SCHOOL DISTRICT NO. 10,

Defendants and Respondents.

APPEAL FROM:     District Court of the Third Judicial District,
In and for the County of Anaconda-Deer Lodge, Cause No. DV-99-117,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Edmund F. Sheehy, Jr., Cannon & Sheehy, Helena, Montana

For Respondents:

William M. O'Leary, Corette, Pohlman & Kebe, Butte, Montana

Submitted on Briefs:  March 30, 2004

Decided:  February 1, 2005

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1 Antoinette Svaldi ("Svaldi") appeals from an order of the District Court for the Third Judicial District, Anaconda-Deer Lodge County, granting summary judgment in favor of the County, thereby dismissing her claim for severe emotional distress. We affirm.

¶2 We re-state and address the following issues raised by Svaldi on appeal:

¶3 1. Did the Anaconda–Deer Lodge County Attorney negligently breach a legal duty owed to Svaldi when he told a newspaper that he was discussing with her attorney a deferred prosecution agreement that concerned possible criminal charges against her?

¶4 2. Did the County Attorney negligently breach a legal duty owed to Svaldi when he revealed to a newspaper the initial offense report naming Svaldi as a possible suspect in an offense?

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶5 Prior to her retirement in May 1998, Svaldi had been teaching in the Anaconda public school system for approximately 25 years. On March 2, 1998, parents of children taught by Svaldi made an assault complaint against her to the Anaconda-Deer Lodge County Police. Several of the parents alleged Svaldi had assaulted and/or was verbally abusive to their children. A written initial offense report was created and was forwarded to the Anaconda–Deer Lodge County Attorney's Office along with a request for prosecution.

¶6 About the same time as the initial offense report was filed, the parents made written complaints concerning the same matters against Svaldi to the Anaconda School District ("School District"). In response to the complaints, the School District placed Svaldi on administrative leave pending investigation. The School District conducted an independent

2

investigation and prepared an investigation report. The County Attorney, Michael Grayson ("Grayson"), obtained a copy of the School District's investigation report through an investigative subpoena.

¶7 On or about April 27, 1998, Grayson contacted Svaldi's attorney in this matter, Mark Vucurovich ("Vucurovich"), to discuss the possible criminal prosecution and the possibility of a deferred prosecution agreement. In a letter dated April 28, 1998, Vucurovich informed Svaldi of the details of his conversation with Grayson.

¶8 On May 5, 1998, Vucurovich submitted a letter to Robert Brown ("Brown") the attorney for the School District, informing him that Svaldi intended to retire at the end of the 1998 school year. In the letter, Vucurovich authorized Brown to discuss Svaldi's retirement with County Attorney Grayson at a meeting scheduled between Grayson, the complaining parents and Brown. The letter also stated, "[Svaldi] is retiring based upon assurances from the School District that there will be no criminal prosecution in this matter." However, Vucurovich admitted he was aware that any decision regarding criminal prosecution would be made by the County Attorney, not by the School District.

¶9 On May 12, 1998, Grayson sent a letter and deferred prosecution agreement to Vucurovich. The proposed deferred prosecution agreement was for a term of two years and required Svaldi to "retire from teaching children in any capacity."

¶10 Subsequently, a reporter from the Anaconda Leader, an area newspaper, contacted Grayson about the case. Grayson informed the reporter that his office was discussing a deferred prosecution agreement with Svaldi's attorney in exchange for Svaldi's promise to retire from teaching. Upon request, Grayson also provided the reporter with a copy of the

3

initial offense report. Svaldi did not sign a deferred prosecution, she retired, and Grayson did not pursue criminal prosecution.

¶11 Svaldi sued the County and the School District for damages alleging breach of her right to privacy and claiming damages for severe emotional distress. The School District and the County both moved for summary judgment. On April 23, 2003, the District Court entered its Opinion and Order granting summary judgment in favor of the School District and the County. Svaldi does not appeal the judgment in favor of the School District. She appeals the judgment in favor of the County.

## II. STANDARD OF REVIEW

¶12 Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Our standard in reviewing a district court's summary judgment ruling is *de novo*. *Renville v. Frederickson*, 2004 MT 324, ¶ 9, 324 Mont. 86, ¶ 9, 101 P.3d 773, ¶ 9. "Accordingly, such review affords no deference to the district court's decision and we independently review the record, using the same criteria used by the district court . . . to determine whether summary judgment is appropriate." *Renville*, ¶ 9. Moreover, all reasonable inferences which may be drawn from the offered proof must be drawn in favor of the party opposing summary judgment. *Renville*, ¶ 9.

## III. DISCUSSION

### ISSUE ONE

¶13 **Did the Anaconda–Deer Lodge County Attorney negligently breach a legal duty owed to Svaldi when he told a newspaper that he was discussing with her attorney a deferred prosecution agreement that concerned possible criminal charges**

4

**against her?**

¶14    Svaldi brings suit to collect damages for the County Attorney's alleged negligent violation of the Criminal Justice Information Act. Section 44-5-101, MCA, *et seq.,* (the "Act"). Svaldi first argues that there was a genuine issue of material fact as to whether the County Attorney was discussing with Svaldi's attorney possible agreements that the State not file charges against her in exchange for an agreement that she retire from teaching. Accordingly, Svaldi argues the District Court erred in granting summary judgment in favor of the County. Svaldi next argues that "discussions" relating to a possible deferred prosecution agreement constitute confidential, not public, criminal justice information under the Act. Therefore, County Attorney Grayson acted negligently when he told a reporter from the Anaconda Leader that he was discussing the option of a deferred prosecution agreement with Svaldi's attorney.

¶15    The basis underlying Svaldi's claim is that Grayson breached a duty owed to her by releasing confidential criminal justice information to the press. It is not an issue of material fact whether Grayson actually had bi-lateral discussions with Svaldi's attorney, or whether Svaldi had actual knowledge of any discussions Grayson had with her attorney. The factual basis of this claim is what Grayson said to the press. The parties do not dispute that Grayson made a statement to the press, wherein he identified Svaldi, and said he was discussing a possible deferred prosecution agreement with Svaldi's attorney. There is no dispute concerning the contents of the statement. Thus, there is no material issue of fact. The issue is one of law; whether the information disseminated by Grayson constituted a tortious release of confidential criminal justice information. Therefore, the District Court did not err in

concluding there were no disputed issues of material fact.

¶16    By statute, criminal justice information is classified as either public criminal justice information, or confidential criminal justice information. *Bozeman Daily Chronicle v. City of Bozeman Police Dept.* (1993), 260 Mont. 218, 222, 859 P.2d 435, 437-38.  Public criminal justice information is defined in § 44-5-103(13), MCA, and includes information "of convictions, deferred sentences, and deferred prosecutions."  Confidential criminal justice information is defined in § 44-5-103(3), MCA, and includes information related to criminal investigations or criminal intelligence, fingerprints and photographs, or "any other criminal justice information not clearly defined as public criminal justice information."

¶17    "With some qualifications, public criminal justice information may be disseminated without restriction." *Bozeman Daily Chronicle*, 260 Mont. at 223, 859 P.2d at 438; § 44-5-301(1), MCA.  The dissemination of confidential criminal justice information, on the other hand, is restricted by statute. *See* § 44-5-303, MCA.

¶18    Svaldi asserts that only those deferred prosecution agreements that are in writing and executed by the parties as provided by § 46-16-130(1)(b), MCA, constitute public criminal justice information.  She argues that since no such agreement was ever signed in this case, the information concerning the possibility of such an agreement that Grayson revealed to the newspaper reporter was not public criminal justice information, and could, therefore, not be disclosed.  We agree that only those deferred prosecution agreements that are actually executed meet the definition of public criminal justice information in § 44-5-103(13), MCA.  However, that does not mean that discussions related to the possible offering of a deferred prosecution agreement meet the statutory definition of confidential criminal justice

6

information.

¶19 Mere discussion of a possible deferred prosecution agreement, which is one of several options available to a county attorney in handling a case, does not constitute a discussion of criminal justice information. Criminal justice information is defined as "information relating to criminal justice collected, processed, or preserved by a criminal justice agency." Section 44-5-103(8)(a), MCA. A county attorney's discussions related to the possibility that a deferred prosecution agreement may be offered do not concern "collected," "processed," or "preserved" information obtained by a criminal justice agency. Therefore, such discussions are not protected from public disclosure by the Criminal Justice Information Act.

¶20 Svaldi attempts to create an argument that her privacy rights were violated by Grayson's interview with a newspaper reporter. She cites *Engrav v. Cragun* (1989), 236 Mont. 260, 769 P.2d 1224, in support of her position. In *Engrav* this Court stated "[i]ndividuals arrested under suspicion of committing a crime and who are subsequently released without charges or incarceration must be protected from public persecution." *Engrav*, 236 Mont. at 266-67, 769 P.2d at 1228. While there might be circumstances in which persons suspected of having committed a crime may have a reasonable expectation that their privacy will not be violated by a release of the details of an investigation conducted by law enforcement agencies, the record makes it clear that such is not the case here.

¶21 Svaldi cannot seriously argue that her privacy rights were violated by Grayson. She admittedly announced to her students that the allegations against her were the "worse kept secret in town." She was the subject of a School Board investigation and the School Board

held a public meeting to discuss her retirement. County Attorney Grayson did not reveal any information about the allegations against Svaldi that the newspaper and the public did not already know.

¶22 Accordingly, there is no material issue of fact concerning whether Grayson negligently breached a duty owed to Svaldi when he told the Anaconda Leader that he was discussing the possibility of entering into a deferred prosecution agreement with her attorney. And, no legal duty owed to Svaldi was breached by such discussion.

### ISSUE TWO

¶23 **Did the County Attorney negligently breach a duty owed to Svaldi when he revealed to a newspaper the initial offense report naming Svaldi as a possible suspect in an offense?**

¶24 Svaldi argues, pursuant to a 1988 Attorney General's Opinion, the initial offense report in this case did not constitute public criminal justice information, as Svaldi was a mere suspect and was never charged with any crime. *See* 42 Mont. Op. No. 119 Atty. Gen. 454 (1988). In this opinion, the Attorney General stated that as a general rule initial offense reports must be made publicly available, however, circumstances may arise in which these documents involve a privacy interest which clearly exceeds the public's right to know. 42 Mont. Op. No. 119, 464. This, according to the Attorney General, may be the case where an innocent person is publicly designated as a suspect in a crime. 42 Mont. Op. No. 119, 464.

¶25 Considering the uncontested facts of this case, we are not called on to determine if the Attorney General was correct in his 1988 opinion referenced above. We decline to do so.

¶26 Svaldi attempts to further support her argument by reference to *Bozeman Daily*

8

*Chronicle*, 260 Mont. at 227, 859 P.2d at 441, where this Court noted "suspects" may have an expectation of privacy in "certain circumstances because criminal investigations occasionally result in the designation of the innocent as suspects, particularly in the early stages of investigation." Thus, according to Svaldi, as she was a mere suspect in this case, she had a privacy interest in the initial offense report which outweighed the public's right to know. Her reasoning is flawed.

¶27     Section 44-5-103(13)(e)(i), MCA, states that initial offense reports constitute public criminal justice information which can be publicly disseminated without restriction pursuant to § 44-5-301(1), MCA.

¶28     *Citizens to Recall Mayor James Whitlock v. Whitlock* (1992), 255 Mont. 517, 844 P.2d 74; *Great Falls Tribune Co., Inc. v. Cascade County Sheriff* (1989), 238 Mont. 103, 775 P.2d 1267; and *Bozeman Daily Chronicle* support our conclusion that the public's right to know outweighs Svaldi's right to privacy under the facts presented.

¶29     In *Great Falls Tribune*, a newspaper sought public disclosure of the names of three law enforcement officers disciplined for their actions in running over a suspect on a public sidewalk with a police car after the suspect fled on foot from a high-speed chase. This Court held the public's right to know outweighed the privacy interest of the officers in preventing the release of their names because police officers "occupy positions of great public trust." *Great Falls Tribune*, 238 Mont. at 107, 775 P.2d at 1269.

¶30     In *Bozeman Daily Chronicle*, the newspaper sought public release of the investigative documents associated with a police officer accused of sexual intercourse without consent by a cadet at the Law Enforcement Academy under the "right to know" clause of the Montana

9

Constitution. No criminal charges were ever filed against the officer, but he was forced to resign from the police force. This Court held that even though criminal investigative information constitutes confidential criminal justice information, "such alleged misconduct went directly to the police officer's breach of his position of public trust; that, therefore, this conduct is a proper matter for public scrutiny; and that, accordingly, the Chronicle has met its initial burden to make a proper showing to receive the confidential criminal justice information at issue." *Bozeman Daily Chronicle*, 260 Mont. at 227, 859 P.2d at 440-41.

¶31 The reasons for public disclosure of allegations against persons holding positions of great public trust which this Court discussed in *Great Falls Tribune*, 238 Mont. at 107, 755 P.2d at 1269, and in *Whitlock*, 255 Mont. at 522, 844 P.2d at 77, apply to Svaldi under the facts presented here. As a teacher in the public schools, entrusted with the care and instruction of children, her position is one of public trust. Also, the allegations of misconduct, assault against her students, went directly to her ability to properly carry out her duties. As in *Whitlock*, where we pointed out that the particular allegations of misconduct went directly to the public official's ability to properly carry out his duties, it is not required that the allegations against Svaldi be withheld from public scrutiny even though no criminal charges were ultimately filed against her. *Whitlock*, 255 Mont. at 522-24, 844 P.2d at 77-78.

¶32 Further, as discussed in Issue I, Svaldi cannot seriously claim her privacy rights were violated by the release of the initial offense report when it was already public knowledge that the allegations were against her, what the allegations were, who was involved as complainants, that she was the subject a School Board investigation concerning the allegations, and that her intended retirement from teaching was connected to these same allegations. Grayson was justified in releasing the report.

## IV. CONCLUSION

¶33 The Anaconda–Deer Lodge County Attorney did not breach a duty owed to Svaldi by discussing a possible deferred prosecution agreement with the Anaconda Leader, or by releasing to that newspaper a copy of the initial offense report. We affirm the judgment of the District Court.

/S/ JOHN WARNER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE