JUSTICE McKINNON,
dissenting.
¶44 Preliminarily, I disagree with the Court’s resolution of two smaller issues: our decision to remand for an in camera review to determine if an exception to nondisclosure applies pursuant to 20 U.S.C. § 1232g(b)(6)(B) and our failure to rule on the Commissioner’s request regarding attorney fees.
¶45 With respect to these issues, I agree with the Court that had the Commissioner released documents pursuant to Krakauer’s request for a specific student’s records, the Commissioner would have violated FERPA and its accompanying regulatory scheme. Opinion, ¶ 24. I depart from the Court, however, in our decision to remand for a determination of whether 20 U.S.C. § 1232g(b)(6)(B) applies, which is part of FERPA and the regulatory scheme. Pursuant to this provision of FERPA, a university may disclose to the public the final results of disciplinary proceedings against an alleged perpetrator of a crime of violence or nonforcible sex offense, but only if the university determines that the student violated the university’s rules or policies with respect to the offense. The Commissioner has stated on several occasions that this provision is inapplicable. As the Court states, “if no violation was found to have occurred, this exception, by its own terms, would not apply.” Opinion, ¶ 26. I therefore would not remand for the District Court to consider the applicability of this exception when counsel for the Commissioner has represented, following acknowledgment of the specific exception, the inapplicability of the subsection. Indeed, it is apparent that the reason Krakauer is interested in obtaining all of the student’s records is that the Commissioner found no violation. Further, as the Court properly notes, this narrow exception would only permit release of limited information related to the name of the student, the violation committed, and any sanction imposed by the institution. Opinion, ¶ 26. The record already establishes that no sanctions were imposed; the Commissioner has represented, through counsel, that the specific exception is inapplicable; and Krakauer’s request identifies the student by name. It is therefore pointless to remand for an in camera review to determine whether the exception applies.
*545 ¶46 Montana law also prohibits the Commissioner from releasing the student’s academic records in response to Krakauer’s request. Section 20-25-515, MCA, prohibits the release of a student’s records absent consent of the student or “subpoena [issued] by a court or tribunal of competent jurisdiction.” At the time the Commissioner denied Krakauer’s request, the student had not consented to the release of his records and a subpoena or court order had not issued. Therefore, the Commissioner correctly refused to disclose the student’s academic records in response to Krakauer’s request. The Court nonetheless fails to find that the Commissioner’s actions in following both federal and state law within the context of a discretionary award of attorney fees pursuant to § 2-3-221, MCA, does not warrant a conclusion that Krakauer be responsible for his own fees and costs. Given the conclusion reached by the Court—that the Commissioner was required to follow FERPA and § 20-25-515, MCA—I would hold that the Commissioner is not responsible for Krakauer’s fees and costs since Krakauer has pursued an exception to FERPA and Montana law. Given the context of FERPA, the federal regulatory scheme, and Montana law, it would be unreasonable to conclude that the Commissioner should be held responsible for Krakauer’s fees and costs.
¶47 A larger concern, however, is the Court’s decision to remand these proceedings for an in camera review by the District Court and our abbreviated analysis of the balancing test to be employed.[1] In the context of this particular case, we have left unanswered many of the questions raised by the parties which, in my opinion, were incorrectly resolved as a matter of law by the District Court. Our guidance to the District Court is essentially that, “[t]his enhanced privacy interest must be considered and factored into the constitutional balancing test on remand.” Opinion, ¶ 37. In an attempt to describe “this enhanced privacy interest,” we cite “phrasing” from another jurisdiction, “merely for illustrative purposes,” but are unwilling to a set forth a standard, rule, or appropriate analysis regarding a statutorily protected enhanced privacy interest. In my opinion, we have failed to address the parties’ arguments. If correct legal principles and analyses are applied by this Court while considering the specificity of Krakauer’s request, it is not necessary to remand these proceedings to the District Court for an in camera review and balancing of privacy interests and the right to know.
*546 ¶48 When considering the disclosure of confidential information, the constitutional right to know granted by Article II, Section 9 of the Montana Constitution, must be balanced with the constitutional right of privacy granted by Article II, Section 10 of the Montana Constitution. We have stated that when balancing these competing interests, a court must perform a two-part test: (1) whether the individual has a subjective or actual expectation of privacy; and (2) whether society is willing to recognize that expectation as reasonable. Bozeman Daily Chronicle v. City of Bozeman Police Dep’t., 260 Mont 218, 225, 859 P.2d 435, 439 (1993). We have on many occasions determined that society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual's ability to perform public duties. See Great Falls Tribune v. Cascade Cnty. Sheriff, 238 Mont. 103, 107, 775 P.2d 1267, 1269 (1989) (the public’s right to know outweighed the privacy interests of three disciplined police officers in the public release of their names because police officers hold positions of “great public trust”); Bozeman Daily Chronicle, 260 Mont. at 227, 859 P.2d at 440-41 (investigative documents associated with allegations of sexual intercourse without consent by an off-duty police officer were proper matters for public scrutiny because “such alleged misconduct went directly to the police officer’s breach of his position of public trust ...”); Svaldi v. Anaconda-Deer Lodge Cnty., 2005 MT 17, ¶ 31, 325 Mont. 365, 106 P.3d 548, (a public school teacher entrusted with the care and instruction of children held a position of public trust and therefore the public had a right to view records from an investigation into the teacher’s abuse of students); and Billings Gazette v. City of Billings, 2013 MT 334, ¶ 49, 372 Mont. 409, 313 P.3d 129 (“an employee may have a lower expectation of privacy in misconduct related to a duty of public trust, such as responsibility for spending public money or educating children.”).
¶49 These cases, referred to by the Court in the Opinion, ¶ 37, n.8, are examples of a reduced expectation of privacy—reduced because the privacy interest is unreasonable and therefore not one that society is willing to recognize. They are examples of how a reduced expectation of privacy is balanced against the right of the public to know how its public monies are spent or its public institutions are managed. Undisputedly public employees have no statutory protection for their privacy rights when the information relates to the ability of the individual to perform his public duties. Bozeman Daily Chronicle, 260 Mont. at 226-27, 859 P.2d at 440-41. Here, in contrast, we are applying an enhanced privacy interest, with significant protections afforded that interest by the Montana Legislature in Title 20, Chapter 25. In *547 addition to § 20-25-515, MCA, prohibiting the release of student records unless there is consent or a lawfully issued subpoena, universities are prohibited from requiring students to waive privacy rights, § 20-25-512, MCA; students must be given written notice before university officials may enter their rooms, § 20-25-513, MCA; and academic transcripts may only contain information of an academic nature, § 20-25-516, MCA. The existence of these student privacy protections and the absence of any applicable exception establish both the actual expectation of privacy and the reasonableness of that expectation. Accordingly, when the privacy rights of the student may not be protected by redacting “personally identifiable information” the student’s right of privacy in school records outweighs the public’s right to know because that privacy interest has been statutorily determined to be reasonable. Once we have found an actual expectation of privacy that is reasonable, we must protect that privacy interest. See Bozeman Daily Chronicle, 260 Mont. at 228, 859 P.2d at 441. (“In this case ... the victim of the alleged sexual assault and the witnesses involved in the investigation have a subjective or actual expectation of privacy which society is willing to recognize as reasonable. Accordingly, the privacy rights of the alleged victim and of the witnesses outweigh the public’s right to know and must be accorded adequate protection in the release of any of the investigative documents at issue.”) Thus, whenever we cannot adequately protect a recognized reasonable expectation of privacy, the records may not be disclosed. The Court has presented no authority to the contrary.
¶50 Montana law does not distinguish between types of students. The protected interest a student has in his education records is not diminished if the information is already public or if there has been publicity about an event involving the student. Information in a student disciplinary proceeding is broader than that presented in a criminal proceeding, where a defendant receives numerous constitutional and statutory protections. Student education records exist primarily to assist the university in the education of its students. The fact that information revealed through the evolution of a criminal proceeding may also be duplicated within the broader student disciplinary file is irrelevant to whether the student maintains his privacy rights in his education records. The occurrence of a criminal proceeding, which must be public, does not serve to strip a student’s privacy interests from his confidential education files. The purposes and objectives underlying these separate proceedings are distinct and we should articulate as much for the trial courts. The laws protecting a student’s education records are neither limited nor lessened because a student has been charged with a criminal offense or is being *548 scrutinized by the media. This remains true even though that student may be a star quarterback for a Montana university, a redshirt freshman from a small, rural Montana town, or any other student in whom the public may have a particular interest.
¶51 In agreeing with the Court that a student’s education records enjoy “the unique privacy protection [that is] legislatively cloaked around the subject records,” Opinion, ¶ 37, I do not contend that a student’s privacy right is absolute. Many proceedings in other jurisdictions have balanced FERPA, state statutory provisions protecting the confidentiality of student records, and countervailing interests in disclosure See Ragusa v. Malverne Union Free Sch. Dist., 549 F. Supp. 2d 288, 293-94 (E.D.N.Y. 2008) (ordering the production of relevant education records in a discrimination case); Catrone v. Miles, 160 P.3d 1204, 1210-12 (Ariz. Ct. App. 2007) (holding that education records could be ordered to be produced in a medical malpractice case and noting “the protections afforded to educational records by statute do not prohibit, but rather permit, disclosure pursuant to court order”); Gaumond v. Trinity Repertory Co., 909 A.2d 512, 518 (R.I. 2006) (holding that FERPA does not bar the production of relevant education records pursuant to court order in a personal injury case). In many of these instances, the records were relevant to litigation that did not involve the records themselves. See Gaumond, 909 A.2d at 518 (distinguishingprior cases where public disclosure was sought by newspapers and was not granted).
¶52 In the context of Krakauer’s request for the specific student’s records, the student’s enhanced privacy interest would receive no protection. As the Court observes, “I o Ibviou.sly, records provided in response to a request naming a particular student will be about that student ....” Opinion, ¶ 38. Here, Krakauer requested a specific student’s records by name, because he wanted the specific student’s records. Had he been interested in the process by which the Commissioner handled complaints of sexual assault, his request would not have been specific as to the student. Krakauer’s request of the Commissioner was to “inspect or obtain copies of public records that concern the actions of the Office of the Commissioner of Higher Education in July and August 2012, regarding the ruling by the University Court of the University of Montana in which student [name redacted] was found guilty of rape and expelled from the University.” With the exception of 20 U.S.C. § 1232g(b)(6)(B), which the Commissioner indicated was inapplicable, state and federal privacy laws clearly prohibited the Commissioner from disclosing the records based upon the specificity of the request. Significant to the resolution of these proceedings, Krakauer did not make his request in a manner *549 which would allow the student’s “unique” privacy right—cloaked with legislative protection, Opinion, ¶ 37—to receive any semblance of protection through, for example, redaction of personally identifiable information. If Krakauer had wanted an understanding of how the Commissioner’s office handles appeals related to the student conduct code and, in particular, sexual assaults, he could have requested all decisions resolving complaints for an appropriate specified period of time. Such an interest is substantial and appropriately protected by our constitutional and statutory provisions concerning the public’s right to know. It is undisputed that the Commissioner would have responded to such a request by supplying the student education records with personally identifiable information redacted in a manner which would have also protected the student’s substantial privacy interest in his education records. Thus, given the manner in which Krakauer has made his request, any “balancing” of interests that could include protection of the student’s enhanced privacy interest is unobtainable. It is clear that what Krakauer sought were particular student records for the publication of his book. Although this Court has precedent for the disclosure of confidential records of a particular person, those cases exist in the context of a reduced expectation of privacy of public employees. The student here is not a public employee, but a student—and Montana law does not distinguish between types of students and their expectation of privacy. Their records are uniformly private. Disclosure here violates not just the federal protections provided by FERPA, but also our own law in Montana.
¶53 I would reverse the judgment of the District Court. I would conclusively decide the issue of attorney fees and costs in favor of the Commissioner. Remand for in camera review is not necessary given the manner in which the request for records was made and that, as a result, no protection can be accorded the student’s substantial and weighty privacy interests. I would affirm on issue one.

 Krakauer arguably foreclosed his opportunity for an in camera review of the records when he represented to the District Court and this Court that an in camera review was not necessary.