JUSTICE COTTER
delivered the Opinion of the Court.
¶1 In 2010, the Billings Police Department instituted an administrative investigation of one of its employees who was suspected of wrongdoing. The Billings Gazette sought access to a document generated by the Department as a result of its investigation. Because the conduct of the employee could potentially result in criminal charges against her, the City of Billings declined to provide the requested document to the Gazette. The Gazette sued in the Thirteenth Judicial District Court for Yellowstone County seeking a declaratory judgment that the City must release the requested document. The District Court ruled in favor of the Gazette and ordered that the document be provided to the newspaper. The City appealed, and obtained an order staying judgment through the appeal. We affirm.
ISSUE
¶2 A restatement of the issue on appeal is whether the District Court erred in granting the Billings Gazette’s petition for declaratory judgment.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 Deanna Anthony, in her capacity as a Police Department Senior *524 Administrative Coordinator, was authorized to make purchases of supplies and equipment on a police department credit card issued by the City of Billings. In May 2010, allegations arose that Anthony had used the credit card for personal purchases. A Billings Police Department captain was assigned to conduct an internal investigation of the allegations. Additionally, the City asked the State Division of Criminal Investigation to conduct a criminal investigation. The Department captain’s internal investigation included two detailed interviews with Anthony as well as interviews with third parties. At both Anthony interviews, the captain advised Anthony that she did not have the right to remain silent but that nothing she said could be used against her in a criminal proceeding.
¶4 In late October 2010, upon completion of the investigation, the captain issued a “due process letter” to Anthony notifying her of a due process hearing scheduled for November 12, 2010, at which Anthony would be given the opportunity to respond to the allegations and the evidence obtained during the investigation. This “due process letter” was 16 pages long and contained the detailed evidence gathered during the investigation. It is this letter the Gazette is seeking. Anthony resigned on November 10, 2010; therefore, the November 12 due process hearing did not take place.
¶5 On November 12, citing the Article II, Section 9 “right to know” provision of the Montana Constitution, the Gazette requested the due process letter from the City of Billings. On November 24, the City declined to provide the letter on the grounds that a criminal investigation was underway and release of the information in the letter “would potentially jeopardize that case.”
¶6 On December 1, 2010, the Gazette filed a Verified Petition for Declaratory Relief and Petition for a Writ of Mandamus. The newspaper argued that the due process letter was a public document pertaining to a public employee occupying a position of trust, and was subject to release under Article II, Sections 8 and 9 of the Montana Constitution, the Freedom of Information Act, and §2-6-102, MCA.
¶7 On December 6, 2010, the City moved for summary judgment, attaching a copy of the due process letter to its motion for the court’s in camera review. The City argued that release of a public document is a discretionary act requiring the court to balance the right to know against the right to individual privacy. The City asserted that Anthony had a reasonable expectation of privacy because she was a clerical employee and not a “sworn officer or an elected official.” The City pointed out that should the State file criminal charges, the Gazette *525 would have full access to “all of the information that can be substantiated by the Department of Justice,” but that immediate release of the document could make future prosecution of Anthony impossible. Lastly, the City argued that Anthony was an indispensable party to the action between the City and the Gazette.
¶8 On December 13, 2010, and in response to the City’s motion for summary judgment, the Gazette moved for summary judgment, seeking the release of the documents through an order or a writ. On December 14, the court issued its Order and Decision granting the Gazette’s petition for declaratory judgment and denying the City’s motion for summary judgment. In addition, the court concluded that Anthony was not an indispensable party in the action between the City and the Gazette because her presence in the action was not needed to afford complete relief to the existing parties. Noting that the City had done “a commendable job of protecting Anthony’s interests,” the court nonetheless provided Anthony three days within which to request intervention in the proceedings to protect her interests. Anthony duly sought intervention by motion on December 16, 2010, but her motion was never entertained by the District Court because it was filed after the City of Billings filed its notice of appeal from the court’s order of summary judgment. This appeal follows.[1]
STANDARD OF REVIEW
¶9 We review for correctness a district court’s interpretation of law pertaining to a declaratory judgment ruling. In re Estate of Marchwick, 2010 MT 129, ¶ 8, 356 Mont. 385, 234 P.3d 879.
DISCUSSION
¶10 Did the District Court err in granting the Billings Gazette’s petition for declaratory judgment ?
¶11 In its order granting the Gazette’s petition for declaratory judgment, the District Court noted that both “the City and the Gazette agree the documents in question are public documents subject to the right to know” and that both parties “acknowledge the documents are subject to public disclosure unless the demands of individual privacy clearly outweigh the public’s right to know.”
¶12 In balancing Anthony’s right to privacy with the public’s right to *526 know, the District Court considered the well-established two-prong test: (1) whether Anthony has a subjective or actual expectation of privacy; and (2) whether society is willing to recognize that expectation as reasonable. Bozeman Daily Chronicle v. City of Bozeman Police Dept., 260 Mont. 218, 225, 859 P.2d 435, 439 (1993). The court, citing Citizens to Recall Mayor v. Whitlock, 255 Mont. 517, 844 P.2d 74 (1992), noted “[pjublic employees who occupy positions of trust have no legitimate right of privacy to investigations of their conduct.” Therefore, the court determined that whether Anthony had a reasonable expectation of privacy depended upon whether she occupied a “position of trust” with the City of Billings Police Department. The City argued that as an administrative employee Anthony was not in a position of trust, while the Gazette argued that a person holding a job that allows her to spend public monies is in a position of trust. The District Court agreed with the Gazette, observing that ‘it seems quite clear that a person who is entrusted with public monies would be considered a person in a position of trust.” Therefore, the court concluded Anthony had no reasonable expectation of privacy in the investigative document.
¶13 The court next addressed the City’s arguments that the ongoing criminal investigation may be compromised if the due process letter is released. The District Court concluded that because the due process letter could not be used in the criminal investigation there was no reason to delay the release of the letter. The court noted the Justice Department would be required to conduct the criminal investigation with extreme care, but concluded that the requisite caution did not alter the presumption that public records should be released unless the expectation of privacy outweighs the release of the information.
¶14 On appeal, the City maintains that the release of the due process letter would taint the ongoing criminal investigation against Anthony and jeopardize the State’s ability to prosecute her if there is a finding of wrongdoing. The City also continues to assert that Anthony had a reasonable expectation of privacy and that she was not in a “position of trust.” The Gazette, on the other hand, urges us to affirm the District Court’s determination that Anthony was a public employee holding a position of trust and therefore had no reasonable expectation of privacy in an investigation into her abuse of that trust. The Gazette also argues that the existence of a separate criminal investigation cannot infringe on the public’s right to know the outcome of the City’s administrative investigation. Anthony, as amicus on appeal, argues that the due process letter is part of her personnel file in which she is *527 entitled to privacy protections.
¶15 It is well established in Montana that citizens have certain rights pertaining to examination and observation of the governmental actions of their public officials and employees. Article II, Section 9 of the Montana Constitution provides:
No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.
Additionally, in relevant part, § 2-6-102(1), MCA, provides: ‘Every citizen has a right to inspect and take a copy of any public writing of this state ....” This right extends not only to individuals but also to media entities. Yellowstone Cty. v. Billings Gazette, 2006 MT 218, ¶ 17, 333 Mont. 390, 143 P.3d 135.
¶16 The public’s right to know, however, must be balanced with an individual’s right to privacy. Article II, Section 10 of the Montana Constitution states:
The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest.
Since our 1972 Constitution was adopted, we have recognized that the only exception to the restriction against the invasion of individual privacy is a compelling state interest. Montana Human Rights Div. v. Billings, 199 Mont. 434, 444, 649 P.2d 1283,1288 (1982). In Montana Human Rights, we adopted the above-referenced test to determine whether a person has a constitutionally protected privacy interest. We examined whether the person involved has a subjective or actual expectation of privacy, and whether society is willing to recognize that expectation as reasonable. Montana Human Rights, 199 Mont. at 442, 649 P.2d at 1287.
¶17 This test was applied in Missoulian v. Board of Regents, 207 Mont. 513, 675 P.2d 962 (1984), in which a reporter with the Missoula newspaper, the Missoulian, requested permission to be present during performance evaluations of six Montana university presidents. The Board of Regents denied the request citing the confidentiality of job performance evaluations and the right to privacy held by each school president. The Missoulian brought an action under the “right to know” provisions of the Montana Constitution and the Open Meeting Act. Missoulian, 207 Mont. at 520-21, 675 P.2d at 966. The district court balanced the competing rights and granted the Board’s motion for *528 summary judgment upholding the legality of the closed meetings.
¶18 Applying the first prong of Montana Human Rights’ test, we determined on appeal that the university presidents had an actual expectation of privacy in the evaluation proceeding based upon the written evaluation policies guaranteeing confidentiality. Missoulian, 207 Mont. at 523, 675 P.2d at 968. We also determined that the university presidents’ expectations of privacy in their employment records were reasonable. We noted that employment records could conceivably contain personal family information, health records revealing possible drug or alcohol problems, military or prison records, and other matters of a sensitive and personal nature. Missoulian, 207 Mont. at 524, 675 P.2d at 968. The Missoulian argued that the records contained much information in which the presidents could have no privacy interest, and information that was already part of the public’s knowledge. While we agreed, we nonetheless ruled that the personnel files also contained private information that the individuals involved “did not expect to be disclosed.” Missoulian, 207 Mont. at 525, 675 P.2d at 969. As had the district court, we balanced the right to privacy with the public’s right to know and favored privacy.
¶19 In Great Falls Tribune Co. v. Cascade Cty. Sheriff, 238 Mont. 103, 775 P.2d 1267 (1989), four law enforcement officers were engaged in a high-speed automobile chase. The suspect ultimately jumped from his car and continued his flight on foot. The sheriffs deputy ran his squad car up onto a sidewalk and struck the suspect. The suspect was transported to the jail, rather than to a medical facility for treatment of his injuries. The jailer reported the matter and an investigation of the involved officers ensued. The sheriffs deputy was suspended, one police officer was fired, and two other officers were given the option to resign or be fired. They resigned. Great Falls Tribune, 238 Mont. at 104, 775 P.2d at 1267.
¶20 The Great Falls Tribune requested the names of the disciplined officers but the County Sheriff, the Great Falls Police Chief, and the Great Falls City Manager all denied the request. The Tribune filed a petition in district court seeking the identity of the officers. The district court balanced the two constitutional rights and concluded the officers occupied “positions of great public trust,” and as such, had no reasonable expectation of privacy. The court ordered their identities provided to the newspaper. We affirmed, expressly acknowledging the district court’s observation that ‘it is not good public policy to recognize an expectation of privacy in protecting the identity of a law enforcement officer whose conduct is sufficiently reprehensible to *529 merit discipline.” Great Falls Tribune, 238 Mont. at 107, 775 P.2d at 1269.
¶21 More recently, we applied this two-prong test in Yellowstone Cty. v. Billings Gazette. In that case, the Billings Gazette sought access to public documents held by Yellowstone County concerning civil litigation brought against the County and County officials. Yellowstone Cty., ¶ 1. Specifically, the Gazette wanted access to deposition testimony given by the Interim Chief Public Defender in one of the multiple lawsuits against the County. The district court allowed the Gazette access to the desired document after certain redactions were made. The Gazette appealed asserting a right to the entirety of the deposition transcript. We agreed that the document was a public document subject to public release. Relying on Great Falls Tribune, we concluded that the deponent, who was acting as the Interim Chief Public Defender, was in a “position of public trust,” and that “society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual’s ability to perform public duties.” Yellowstone Cty., ¶¶ 21-23.
¶22 Applying the rationale of these cases to the facts before us, we note the parties do not dispute that the document is a public document created and held by a public body. Therefore, the due process letter is subject to release under the right to know provision. However, whether it should be released requires another analytical step-a balancing test based on the facts of the case to determine whether the public’s right to know is greater than the individual’s right to privacy. Yellowstone Cty., ¶ 20. In this case, the District Court performed such a balancing test, concluding that Anthony’s job-a job that allowed her to spend large amounts of public monieswvas a “position of trust.” As such, and in reliance upon applicable case law, the court determined she did not have a reasonable privacy expectation in the results of an internal formal investigation into wrongdoing associated with her alleged mishandling of those funds. Because she was being investigated for allegations that she misappropriated public funds, which is the very aspect of her job that renders it a “position of trust,” the public documents generated as a result of the investigation should be subject to public disclosure.
¶23 Based on the facts of this case, we conclude the District Court properly performed the balancing test, and that its determination that the public’s right to know exceeded any individual rights of privacy Anthony might have was not erroneous. We reject the argument that *530 our decision in Missoulian compels a different result. At issue in that case were job performance evaluations which the court concluded constituted matters of individual privacy. Missoulian, 207 Mont. at 528, 675 P.2d at 970. We addressed the benefits and detriments of open evaluation sessions and concluded that-in context-public disclosure of the evaluation process was, for many reasons, substantially disadvantageous to that process. Missoulian, 207 Mont. at 532, 675 P.2d at 972. Notably, we specifically considered the Missoulian’s argument that public disclosure would further the public interest by ‘fostering public confidence in public institutions, maintaining the accountability of public officials, [and] assuring public access to information to allow evaluation of public expenditures.” We rejected this argument, stating that the newspaper ‘ha[d] failed to show how any of these public interests would be furthered by public disclosure ....” Missoulian, 207 Mont. at 532, 675 P.2d at 972.
¶24 Here, by contrast, the court was tasked with a review of an investigation into substantial allegations of wrongdoing by a public employee entrusted with public funds. This was not an innocuous performance evaluation. The court concluded that as a public employee in a position of trust, Anthony had no reasonable expectation of privacy in an investigation into her abuse of that trust. It bears noting that the very public interests raised by the newspaper in Missoulian and cited above were absent there, but are present here. As we said in Missoulian, the balancing test must be conducted fin the context of the facts of each case.” Missoulian, 207 Mont. at 529, 675 P.2d at 971. The District Court correctly performed the balancing test here based on the particular facts before it. It did not err in doing so. See also Bozeman Daily Chronicle v. City of Bozeman Police Dep’t., 260 Mont. 218, 227, 859 P.2d 435, 440-41 (1993) (investigative documents associated with allegations of inappropriate sexual conduct of an off-duty police officer were proper matters for public scrutiny because “such alleged misconduct went directly to the police officer’s breach of his position of public trust....”); Svaldi v. Anaconda-Deer Lodge Cty., 2005 MT 17, ¶ 31, 325 Mont. 365, 109 P.3d 548 (a public school teacher entrusted with the care and instruction of children held a position of trust and therefore the public had a right to view records from an investigation into the teacher’s abuse of students).
¶25 We disagree with the Dissent’s characterization of this case as similar to Montana Human Rights and its argument that our holding here undermines our decision in that case. The sole issue in Montana Human Rights was whether an employer may be required to produce *531 the employment applications and personnel files of persons who had no connection to the discrimination claims there at issue. Montana Human Rights, 199 Mont. at 436, 649 P.2d at 1284. Here, by contrast, Anthony is a public employee alleged to have stolen thousands of dollars from the City of Billings. It bears noting that the Gazette is not seeking her personnel file; it is seeking only the due process letter which all parties agree constitutes a public document. Neither Anthony’s status nor her reasonable expectations are logically akin to those of the innocuous job applicants in Montana Human Rights or the university presidents undergoing a routine performance evaluation in Missoulian. We do not seek to undermine our holdings in either case. Rather, we distinguish the cases on the basis of their disparate facts.
¶26 Second, even presuming for the sake of argument that Anthony had an expectation of privacy in the due process report, there remains a second inquiry: Would society be willing to recognize that expectation as reasonable? Bozeman Daily Chronicle, 260 Mont. at 225, 859 P.2d at 439. This prong of the balancing test was not analyzed by the District Court because it found that Anthony had no reasonable expectation of privacy. Having concluded that Anthony has an expectation of privacy in the due process report, the Dissent fails to complete the analysis required under our well-established test. Perhaps this is because-as we said in Yellowstone Cty .-society is not willing to recognize as reasonable the privacy interest of individuals who hold positions of public trust when the information sought bears on that individual’s ability to perform public duties.” Yellowstone Cty., ¶ 21.
¶27 We agree with the observation of the Special Concurrence that each case must be evaluated separately, on the basis of the circumstances and facts presented. We do not say that every public employee with purchasing power can have no expectation of privacy in her personnel matters; rather, we conclude that given the circumstances here4he alleged embezzlement of large sums of money over a protracted period of time-4he District Court correctly conducted the requisite balancing test and reached a conclusion we will not disturb.
¶28 We next address the City’s claim that the due process letter should not be released because a criminal investigation of Anthony’s alleged misconduct is underway. The City asserts that release of the letter to the Gazette and the Gazette’s presumed subsequent publication of the letter would taint any future criminal prosecution. The Gazette counters that the due process letter does not constitute *532 “confidential criminal justice information,” and therefore it does not require limited dissemination under §44-5-303, MCA. The City has failed to provide persuasive authority for prohibiting the release of the due process letter based upon a potential criminal prosecution. As noted by the District Court, the State may not use the due process letter in any criminal proceeding it may choose to bring against Anthony. The mere prospect of a criminal case will not deprive the public of its right to access a public document once that right has been balanced against the right to privacy.
¶29 Lastly, we are not persuaded by Amicus Anthony’s argument that the due process letter is not a public document but rather a simple performance evaluation and a component of her personnel file for which she has an expectation of privacy. Unlike the routine job performance evaluations of the university presidents in Missoulian, the due process letter in this case was the product of an internal public employer investigation of allegations of wrongdoing by a public employee holding a position of public trust.
CONCLUSION
¶30 For the foregoing reasons, we conclude the District Court did not err in its interpretation of applicable law and its decision to grant the Gazette’s petition for declaratory judgment. We therefore remand this matter to the District Court with instructions to lift the stay ordered on December 21 and allow the release of the due process letter after the identities of third party interviewees are redacted.
JUSTICES NELSON and WHEAT concur.

 Though Anthony did not have the opportunity to intervene in the District Court proceedings before a notice of appeal was filed, this Court granted Anthony leave to file an amicus brief and participate in the oral argument of this case.