FILED

03/27/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0386

DA 17-0386

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 58

KRISTINE RAAP,

        Petitioner and Appellant,

   v.

BOARD OF TRUSTEES, WOLF POINT
SCHOOL DISTRICT,

        Respondent and Appellee.

APPEAL FROM:    District Court of the Fifteenth Judicial District,
                    In and For the County of Roosevelt, Cause No. DV-16-1
                    Honorable David Cybulski, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        Peter Michael Meloy, Attorney at Law, Helena, Montana

        For Appellee:

        Mary E. Duncan, Jeffrey A. Weldon, Felt, Martin, Frazier & Weldon, P.C.,
        Billings, Montana

                               Submitted on Briefs:  November 1, 2017

                                     Decided:  March 27, 2018

Filed:

                                        Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1 Kristine Raap (Raap) appeals from the judgment of the Montana Fifteenth Judicial District Court denying her motion for summary judgment and granting summary judgment to the Wolf Point School District Board of Trustees (Board) on her claim that the Board unlawfully terminated her employment in violation of § 2-3-203, MCA (open meeting law) and the Montana Constitution, Article II, Section 9 (right to know). We reverse and remand for further proceedings, restating the issues as:

1. *Did the District Court erroneously grant summary judgment that the Board lawfully closed its meeting based on unspecified third-party privacy rights?*

2. *Did the District Court erroneously grant summary judgment that the Board lawfully excluded Raap and her union representative from its "executive session" under the litigation strategy exception of § 2-3-203(4), MCA?*

## BACKGROUND

¶2 The Wolf Point School District Board of Trustees hired Raap to work as a new teacher under a one-year employment contract for the 2015-16 school year. Four months into the school year, the school district superintendent recommended that the Board prematurely terminate Raap's contract. The Board set a meeting for December 22, 2015, to consider the matter. Raap had previously filed an administrative complaint with the United States Equal Employment Opportunity Commission (EEOC) in November 2015 alleging that the school district had unlawfully discriminated against her in the administration of her employment. Upon EEOC referral of the complaint to the Montana Human Rights Bureau (HRB), HRB issued a written notice on December 11, 2015,

advising the Board of the complaint and resulting commencement of an HRB investigation.[1]

¶3 On December 22, 2015, Raap and her union president appeared before the Board for hearing on the school district superintendent's recommendation to terminate her employment. In addition to Board members, the only persons present were Raap, her union representative, the superintendent, Raap's supervising school principal, and the Board's lawyer via telephone. No one else appeared or otherwise sought admittance to the meeting at any time. At the outset, the Board chair informed Raap that the meeting would be closed to the public unless she waived her right to privacy. Raap then waived her right to privacy. Despite Raap's waiver, the Board's meeting minutes reflect that the chair closed the meeting to the public "to protect the rights of individual privacy of statements and information for those not in attendance." Raap expressed her intent to electronically record the meeting but the Board chair precluded her from doing so.

¶4 After four hours of testimony, the Board chair re-opened the meeting to the public at which time another trustee made a motion, seconded by yet another, for the Board to terminate Raap's employment. Without discussion or deliberation on the motion, and at the request of another trustee, the chair again closed the meeting to allow the Board to privately discuss unspecified litigation strategy at an "executive session" with the Board's lawyer. The Board excluded all from the executive session except for Board members, the

---

[1] The Montana Human Rights Act provides the exclusive remedy under Montana law for claims against private and public employers alleging employment discrimination and retaliation. *See* §§ 49-1-102, 49-2-205, -301, -303, -501, -504, -505, -512(1), 49-3-201, -209, MCA; *Borges v. Missoula Co. Sheriff's Office*, 2018 MT 14, ¶ 19, 390 Mont. 161,__P.3d__.

school superintendent, and the Board's lawyer. After an 11-minute executive session, the Board allowed Raap and her union representative back into the room. Without deliberation or discussion on the termination motion, the Board promptly voted to terminate Raap's contract. In a subsequent District Court affidavit, the Board's lawyer asserted that the Board did not discuss or deliberate whether to terminate Raap's contract in the executive session, to wit:

> The litigation strategy executive session was very short and focused solely on litigation strategy related to defense of the EEOC/HRB claim and my explanation of the claim and the process that would be followed. The bulk of the 11 minutes was taken up with my explanations.

The affidavit provided no explanation or indication of the Board's need to exclude Raap and her union representative from a discussion purportedly focused solely on an explanation of the substance of her previously received complaint and "the process that would follow."

¶5 Following the termination of her employment and an unsuccessful union grievance, Raap filed a complaint in the Montana Fifteenth Judicial District Court alleging that the Board terminated her contract in violation of § 2-3-203, MCA, and Article II, Section 9, of the Montana Constitution. Raap requested that the District Court vacate the Board's decision to terminate her employment and to award her attorney fees and costs incurred in prosecuting the action.

¶6 Upon the parties' cross-motions for summary judgment, and without legal citation or analysis, the District Court summarily granted the Board summary judgment pursuant to M. R. Civ. P. 56 on the stated grounds that: (1) an asserted violation of the § 2-3-203,

4

MCA (open meeting law), was the sole legal basis of Raap's claim; (2) the Board allowed Raap to observe and participate in the portion of the meeting pertinent to its the decision to terminate her contract; (3) the Board did not actually exclude anyone from the portion of the meeting pertaining to the termination of Raap's employment; and (4) the Board properly excluded Raap from the portion of the meeting pertinent to "another litigation" matter. Raap timely appeals.

## STANDARD OF REVIEW

¶7     Summary judgment is proper only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Citizens for Open Gov't, Inc. v. City of Polson*, 2015 MT 55, ¶ 10, 378 Mont. 293, 343 P.3d 584; M. R. Civ. P. 56(c)(3). We review summary judgment rulings de novo for correctness under the standards of M. R. Civ. P. 56. *Ternes v. St. Farm Fire & Cas. Co.*, 2011 MT 156, ¶ 18, 361 Mont. 129, 257 P.3d 352; *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200; *Svaldi v. Anaconda-Deer Lodge Cnty.*, 2005 MT 17, ¶ 12, 325 Mont. 365, 106 P.3d 548.

## DISCUSSION

¶8     As pertinent here, the Montana Constitution, Article II, Section 9, clearly and unambiguously mandates that:

> No person shall be deprived of the right to . . . observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

In conformance with Article II, Section 9, the Montana open meeting law similarly provides that "[a]ll meetings of public or governmental bodies [or] boards . . . of . . . any

5

political subdivision of the state . . . must be open to the public" except to the extent that "the demands of individual privacy clearly exceed the merits of public disclosure." Section 2-3-203(1) and (3), MCA.[2] As defined by statute, a "meeting" is a "convening of a quorum of the constituent membership of" the public or governmental body or board, "whether corporal or by means of electronic equipment, to hear, discuss, or act upon a matter over which the [body or board] has supervision, control, jurisdiction, or advisory power." Section 2-3-202, MCA. As referenced in Article II, Section 9, the term "deliberations of . . . public bodies or agencies" includes a "meeting," as defined by § 2-3-202, MCA. Upon timely petition, a district court may void "[a]ny decision made in violation" of § 2-3-203, MCA. Section 2-3-213, MCA. The sole purpose of public bodies and agencies is "to aid in the conduct of the peoples' business." Section 2-3-201, MCA. Courts must liberally construe Article II, Section 9, and § 2-3-201, MCA, to the end that all deliberations of public bodies and agencies remain open to the public except as otherwise clearly provided under recognized exceptions to the constitutional right to know and § 2-3-203, MCA.

¶9 In analyzing a claimed right to observe deliberations under Article II, Section 9, the pertinent issues are: (1) whether the subject entity is a public body or agency of state government or a state government subdivision; (2) whether the proceeding or decision at issue was a deliberation of that body or agency; and (3) whether the disputed deliberation was nonetheless privileged from disclosure on the grounds of individual privacy or other recognized exception to the right to know. *See* Mont. Const. art. II, § 9; *Great Falls*

---

[2] The Legislature originally enacted the open meeting law in 1963, nine years before adoption of our 1972 Constitution. *See* § 82-3402, RCM (1947).

*Tribune v. Mont. Pub. Serv. Comm'n*, 2003 MT 359, ¶¶ 38-39, 319 Mont. 38, 82 P.3d 876 (equal protection and due process rights exception); *State ex rel. Smith v. Dist. Ct.*, 201 Mont. 376, 383-87, 654 P.2d 982, 986-88 (1982) (speedy and fair trial rights exception); *Great Falls Tribune v. Dist. Ct.*, 186 Mont. 433, 438-39, 608 P.2d 116, 119-20 (1980) (speedy and fair trial rights exception). In this case, it is undisputed that the Board is a public body or agency of a political subdivision of the State of Montana. It is further undisputed that the subject proceedings of the Board constituted a "meeting," as defined by § 2-3-202, MCA, and thus a deliberation of a public body or agency as referenced in Article II, Section 9. The dispositive issue is whether the Board lawfully closed the disputed portions of the meeting.

¶10     *Issue 1: Did the District Court erroneously grant summary judgment that the Board lawfully closed its meeting based on unspecified third-party privacy rights?*

¶11     "The presiding officer of [a] meeting may close the meeting during the time the discussion relates to a matter of individual privacy . . . if and only" upon "determin[ing] that the demands of individual privacy clearly exceed the merits of public disclosure." Section 2-3-203(3), MCA. Under the express privacy exception to Article II, Section 9, and § 2-3-203(3), MCA, the threshold question is whether disclosure of the disputed portion of the deliberation or meeting would infringe on an individual's right to privacy under the Montana Constitution, Article II, Section 10. A right to privacy exists under Article II, Section 10, when (1) an individual has an actual or subjective expectation in non-disclosure of the disputed matter and (2) that subjective expectation is objectively reasonable in society under the totality of the circumstances. *State v. Goetz,* 2008 MT 296,

7

¶¶ 25-31, 345 Mont. 421, 191 P.3d 489; *Great Falls Tribune v. Cascade Co. Sheriff*, 238 Mont. 103, 105-07, 775 P.2d 1267, 1268-70 (1989).

¶12 Our caselaw recognizes that a complainant, third-party witnesses, and the subject of a complaint or allegation of misconduct often have objectively reasonable, subjective expectations of privacy in non-disclosure of their respective involvements prior to formal adjudication of the matter. *See, e.g.*, *Moe v. Butte-Silver Bow Cnty.*, 2016 MT 103, ¶ 19, 383 Mont. 297, 371 P.3d 415; *Goyen v. City of Troy*, 276 Mont. 213, 221, 915 P.2d 824, 829-30 (1996); *Bozeman Daily Chronicle v. Bozeman Police Dept.*, 260 Mont. 218, 227, 859 P.2d 435, 441 (1993). However, the questions of whether an individual has a subjective expectation in non-disclosure of a particular subject matter and whether that expectation is objectively reasonable in society are mixed questions of fact and law under the totality of the circumstances of each case. *See Moe*, ¶ 19 (characterizing subjective expectation of privacy as distinct question of fact dependent on "notice of possible disclosure" and objective expectation of privacy as question of law dependent on "all relevant circumstances"); *Billings Gazette v. City of Billings*, 2013 MT 334, ¶¶ 18, 21, 372 Mont. 409, 313 P.3d 129 (characterizing subjective expectation of privacy as distinct question of fact dependent on "notice of possible disclosure" and objective expectation of privacy as a question of law requiring "reasoned consideration of the specific facts" at issue); *Goetz*, ¶¶ 25-31 (focusing on what a person exposes to others without distinction of questions of fact and law); *Havre Daily News, LLC v. City of Havre*, 2006 MT 215, ¶ 21, 333 Mont. 331, 142 P.3d 864 (analysis of subjective and objective expectations of privacy requires "fact-intensive inquiry" and "reasoned consideration of the specific facts" at

issue); *Great Falls Tribune*, 238 Mont. at 105-07, 775 P.2d at 1268-70 (analysis of subjective and objective expectations of privacy without distinction between questions of fact and law).

¶13    In this case, the Board closed the meeting to the public based on the cursory statement that closure was necessary "to protect the rights of individual privacy of statements and information for those not in attendance." On appeal, the only additional rationale for closure offered by Board is a gauzy argument that "a mid-year termination of a teacher . . . [is] extremely uncommon" and thus "raises *the* [*specter*] of student and teacher complaints, conflicts between the teacher and staff, parents, and students, and other serious allegations that involve other individuals' private school records, performance, and private communications." (Emphasis added). The Board thus asserts that it had no obligation "to identify the names of the individuals whose privacy interests were at stake, nor disclose" what information they would or could relate in regard to the matter at issue. Raap recognizes that the withholding of the specific identities and details of statements made by third-party complainants and witnesses of alleged misconduct is often objectively reasonable. *See, e.g., Moe*, ¶¶ 19-24. Nonetheless, Raap asserts that Article II, Section 9, and § 2-3-203(3), MCA, require an initially-stated rationale, and subsequent showing on district court review, more substantial than a cursory reference to "statements and information" of undescribed third parties.

¶14    Under Article II, Section 9, and § 2-2-203(1) and (3), MCA, meetings of public bodies and agencies are *presumptively* open to all absent "*a showing* of individual privacy rights" or other recognized exception "sufficient to override" the public right to know.

9

*T.L.S. v. Mont. Advocacy Program*, 2006 MT 262, ¶ 28, 334 Mont. 146, 144 P.3d 818 (emphasis added). *See also Bryan v. Yellowstone Cnty. Sch. Dist.*, 2002 MT 264, ¶ 31, 312 Mont. 257, 60 P.3d 381 (citing 1972 Constitutional Convention history). The burden of overcoming the presumption of openness is squarely on the public body or agency, not the public or persons seeking to observe government deliberations. *T.L.S.*, ¶ 28. At the time of closure, the burden is on the public body or agency to articulate a rationale for closure that is sufficiently descriptive to afford reasonable notice to the public of the legal and factual basis for closure without disclosing private information. *See T.L.S.*, ¶ 28; §§ 2-3-203(3) and -212, MCA (burden of overcoming presumption of openness, required "determination," and required meeting minutes).

¶15 Though the initial burden at the time of closure does not necessarily require the type of formal legal analysis and balancing required of reviewing courts, the law requires something more than cursory reference to undescribed third-party privacy rights and mere recitation of applicable constitutional or statutory language. Moreover, on subsequent district court review, the public body or agency has the greater burden of overcoming the presumption of openness by making a particularized showing of the asserted factual basis for a meeting closure under the legal ground asserted for closure. Thus, on a motion for summary judgment, once the complaining party satisfies its threshold burden of showing the absence of any genuine issue of material fact that a public body or agency closed a meeting subject to Article II, Section 9, and § 2-3-203, MCA, the burden shifts to the public body or agency to show the absence of any genuine issue of material fact and that the public body or agency is entitled to judgment as a matter of law that it lawfully closed the meeting

under a recognized exception to the right to know and open meeting requirements. M. R. Civ. P. 56(c)(3).

¶16    For example, in *Moe*, a local government chief-executive sought to terminate the employment of a city-county human resource officer upon the advice and consent of the governing council, as authorized under the consolidated city-county government charter. *Moe*, ¶¶ 4-6. The chief-executive was acting on the basis of an internal investigation report that referenced various allegations and substantiating witness statements of misconduct and deficient performance made by numerous other city-county employees. *Moe*, ¶¶ 4-8. Upon notice that the termination hearing before the council would be closed based on the nature of the allegations against her, the human resource officer waived her right to privacy and requested an open hearing. *Moe*, ¶ 8. However, without identifying the third parties or affording them an opportunity to waive their rights, the presiding officer nonetheless closed the meeting to the public by reference to (1) unidentified city-county employees who had made allegations or witness statements adverse to the subject employee and (2) the officer's determination that the privacy interests of those third parties clearly outweighed the merits of public disclosure. *Moe*, ¶ 9. After a detailed closed-session discussion of the adverse investigation report as a ground for termination of the human resource officer's employment, the presiding officer re-opened the meeting to the public at which time the council voted in open session to approve the recommended termination. *Moe*, ¶ 10.

¶17    On appeal of a subsequent district court grant of summary judgment to the local government, the discharged employee asserted that the closed meeting violated Article II, Section 9, and § 2-3-203, MCA, based on the city-county's failure to: (1) specifically

11

identify the third-party complainants and witnesses; (2) further explain how or on what basis their privacy rights outweighed the merits of public disclosure; and (3) provide notice and opportunity for the third parties to waive their rights. *Moe*, ¶ 16. We affirmed the meeting closure on the grounds that the third-party employees had subjective and reasonable expectations of privacy under the circumstances and that those expectations clearly outweighed the merits of public disclosure, as offset by the public interest in encouraging public employees to report misconduct. *Moe*, ¶¶ 21-25.[3] Contrary to the Board's assertion here, we did not sweepingly hold that the expectations of third-party complainants and witnesses in non-disclosure of their identities or the substance of their statements will clearly outweigh the merits of public exposure in every case and circumstance. *Moe*, ¶¶ 21-25. We merely recognized in *Moe* that such expectations of privacy may be both actual and objectively reasonable under the circumstances at issue. *Moe*, ¶¶ 21-25.

---

[3] We did not address the discharged employee's additional argument, similar to Raap's argument here, that the county independently violated § 2-3-203, MCA, by failing to provide notice and opportunity for the third-parties to waive their rights as contemplated by § 2-3-203(3), MCA. Compare *Goyen* wherein we held that a city council violated § 2-3-203(3), MCA, by twice conducting closed meetings to discuss alleged misconduct by its chief of police without providing him advance notice and opportunity to waive his right to privacy and thereby keep the meeting open to the public. *Goyen*, 276 Mont. at 218-19, 915 P.2d at 828. We held that, upon determining that a person's privacy interest outweighs the merits of public disclosure, the public bodies and agencies "should simply defer any discussion of the issue until the individual whose privacy interest is involved is notified and is given the opportunity to attend . . . or waive his or her right of privacy and have the meeting conducted in open session." *Goyen*, 276 Mont. at 219, 915 P.2d at 828. We held further that a person whose privacy is involved has the "right to be notified . . . regardless of whether" the public body or agency has an independent justification for closing a meeting. *Goyen*, 276 Mont. at 219, 915 P.2d at 828. We need not address this apparent discrepancy in light of our reversal of this case on other grounds.

¶18 In *Moe*, unlike here, the presiding government officer publicly stated a rationale at the time of closure that was sufficiently descriptive to afford reasonable notice to the public of the factual and legal basis for the closure without disclosing any private information. As initially stated and subsequently shown on district court review, closure of the meeting in *Moe* was actually necessary to protect the third-party privacy interests asserted. At the time of closure, without specifically identifying the third parties at issue, the presiding officer in *Moe* at least generally described their relationship to and their general involvement in the matter, *i.e.*, city-county employees who had made allegations and adverse statements against the subject employee. *Moe*, ¶ 9. On subsequent judicial review, the local government proved that it had sufficient factual grounds to overcome the presumption of openness by making a particularized evidentiary showing that both substantiated the asserted third-party privacy interests and showed that closure of the meeting was reasonable and necessary to protect those interests in balance with the merits of public disclosure. *Moe*, ¶¶ 12, 20-25.

¶19 In contrast here, the Board's stated rationale at the time of closing the meeting to the public was no more than cursory reference to "statements and information for those not in attendance." More significantly, the Board subsequently failed to support its originally stated rationale on district court review. In the District Court, the Board presented no more than the affidavit of counsel stating that the school principal "presented information supporting the Superintendent's recommendation to terminate" Raap and that the Board questioned the principal about her testimony. The Board made no showing that any third party testified at the hearing, that the superintendent's recommendation for termination was

13

based in whole or in part on third-party complaints or allegations against Raap, that the superintendent or school principal gave testimony that identified any third party who made complaints or allegations against Raap or otherwise referenced a matter in which a third party had an expectation of privacy. Unlike in *Moe*, the Board failed to make any *particularized showing* as to the nature of the third-party privacy interests asserted, much less how they balanced out against public disclosure under the circumstances of this case.[4] Thus, unlike in *Moe*, the Board failed to overcome the presumption of openness under Article II, Section 9, and § 2-3-203, MCA.

¶20 A related matter warrants mention before moving on. The analyses of the Board and the District Court appears to rely, in part, on the express or implied assertion that no open meeting violation occurred because Raap and her union representative were present and there is no evidence that the Board actually prevented any other interested person from observing the hearing portion of the meeting. Tantamount to a standing argument, reliance on this assertion is misplaced. Raap, like the public-at-large, had the right to expect that the Board would comply with Article II, Section 9, and § 2-3-203, MCA, regardless of whether anyone else was interested in observing the meeting. *Schoof v. Nesbit*, 2014 MT

---

[4] Regretfully, we would be remiss if we did not similarly point out that, in order to facilitate justice, promote public confidence in the judiciary, and facilitate effective appellate review, district courts have a duty to set forth sufficient legal and factual analysis to show the factual and legal grounds for their decision under the applicable legal analysis. *See Ihnot v. Ihnot*, 2000 MT 77, ¶ 15, 299 Mont. 137, 999 P.2d 303 (cursory order based on undeveloped record without findings of fact or conclusions of law precluded appellate review and constituted an abuse of discretion). *See also Beach v. State*, 2009 MT 398, ¶ 26, 353 Mont. 411, 220 P.3d 667 (failure to undertake an independent evaluation of the claims and arguments presented). Though the record was minimally sufficient for our independent de novo review under M. R. Civ. P. 56, the District Court's cursory order was sorely lacking in this regard.

6, ¶¶ 17-18, 373 Mont. 226, 316 P.3d 831. On this basis alone, Raap had a "sufficiently concrete injury" for standing to assert her alleged violations of Article II, Section 9, and § 2-3-203, MCA. *Schoof*, ¶¶ 23-25. Raap also had a more personal interest in an open meeting—-she wanted to electronically record the meeting and the Board precluded her from doing so. At the time, § 2-3-211, MCA (2015), expressly prohibited a public body or agency from prohibiting "accredited press representatives" from photographing or recording open meetings except to the extent the activity "interfere[s] with the conduct of the meeting."[5] Though the statute obviously emphasized the right of the "accredited press" to photograph and record open meetings, Article II, Section 9, affords the press no greater right to observe, record, or report on open meetings than any member of the public. *Accord* 38 Mont. A.G. Op. 8 (1979). Thus, in addition to her general standing, Raap also had a specific personal basis upon which to assert her open meeting claims in this case. We hold that the District Court erroneously granted summary judgment that the Board lawfully closed the hearing portion of the meeting based on third-party privacy rights.

¶21    *Issue 2: Did the District Court erroneously grant summary judgment that the Board lawfully excluded Raap and her union representative from its "executive session" under the litigation strategy exception of § 2-3-203(4), MCA?*

¶22    A public body or agency may close a meeting "to discuss a strategy to be followed with respect to litigation when an open meeting would have a detrimental effect on the litigating position of the public agency." Section 2-3-203(4)(a), MCA. Though we have

---

[5] In 2017, the Legislature amended § 2-3-211, MCA, to more broadly preclude public bodies or agencies from prohibiting a "person" from photographing or recording open meetings. Section 2-3-211, MCA.

not considered whether this statutory exception comports with Article II, Section 9, when a public body or agency is engaged in litigation with a private party, *see Associated Press v. Bd. of Pub. Educ.*, 246 Mont. 386, 391-92, 804 P.2d 376, 379-80 (1991) (narrowly invalidating the statutory litigation strategy exception as applied to litigation between public entities), Raap does not challenge the constitutionality of § 2-3-203(4)(a), MCA. We therefore confine our review to whether the District Court correctly concluded that the Board complied with § 2-3-203(4)(a), MCA.

¶23    Raap asserts that the Board failed to overcome the presumption of openness under Article II, Section 9, and § 2-3-203, MCA, by showing compliance with § 2-3-203(4)(a), MCA.    Without addressing Raap's threshold challenge to the threshold evidentiary competency of the affidavit of the Board's counsel, there is no genuine issue of material fact on the summary judgment record that the Board discussed anything in its 11-minute executive session other than as described in the affidavit of its counsel.

¶24    Nonetheless, other than labeling the executive session as a "litigation strategy session," the Board made no showing on district court review explaining or indicating how its pending decision on whether to terminate Raap's employment at least generally related to its strategy for defending against a previously filed discrimination complaint regarding school district conduct alleged to have occurred prior to the termination hearing.  The Board made no showing that it requested or received advice of counsel regarding its ongoing or contemplated defense against the discrimination complaint, the potential effect of terminating Raap's employment on its defense strategy in that matter, or the potential for its termination decision to result in additional litigation with Raap.  The Board made

16

no showing that Board members communicated facts to counsel pertinent to the Board's defense strategy in any pending or future litigation.

¶25 The summary judgment record is wholly devoid of any factual showing as to how or why concealment of counsel's self-described, non-descript explanation of the substance of Raap's previously filed discrimination complaint, and the process that would follow, was necessary to avoid "a detrimental effect on the [Board's] litigating position" in that or any other pending or contemplated litigation. The Board may well have had cause for closing its executive session under § 2-3-203(4)(a), MCA, but failed to show the reasons for closure on district court review. Therefore, we conclude the Board failed to satisfy its burden of overcoming the presumption of openness under Article II, Section 9, and § 2-3-203, MCA, by demonstrating that it conducted its 11-minuted executive session in compliance with § 2-3-203(4)(a), MCA. We hold that the District Court erroneously granted summary judgment that the Board lawfully excluded Raap and her union representative from its "executive session" under the litigation strategy exception of § 2-3-203(4), MCA.

## CONCLUSION

¶26 We hold that the District Court erroneously granted summary judgment that the Board lawfully closed the termination hearing portion of the subject meeting based on third-party privacy rights. We hold further that the District Court erroneously granted summary judgment that the Board lawfully excluded Raap and her union representative from its "executive session" under the litigation strategy exception of § 2-3-203(4), MCA. Raap raised no issue on appeal under § 2-3-221, MCA (discretionary attorney fees on

17

successful enforcement action under Mont. Const. art. II, § 9), and we make no comment thereon. The Board did not cross-appeal. We reverse the judgment of the District Court. Pursuant to § 2-3-213, MCA, and without comment on its merits, the decision of the Board terminating Raap's employment is hereby reversed and remanded for consideration in compliance with § 2-3-203, MCA, and Article II, Section 9, of the Montana Constitution.

¶27 Reversed and remanded.

/S/ DIRK M. SANDEFUR

We Concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ JIM RICE