Justice Laurie McKinnon delivered the Opinion of the Court.
***251 ¶1 The Commissioner of Higher Education, Clayton Christian (Commissioner), and John Doe appeal an order from the First Judicial District Court, Lewis and Clark County, granting Jon Krakauer's motion to release Doe's educational records. We reverse and dismiss Krakauer's original petition with prejudice, and we affirm the District Court's decision not to award Krakauer attorney fees.
¶2 The Commissioner presents the following issues for review:
1. Did the District Court err in concluding Doe had no expectation of privacy in his educational records?
2. Did the District Court err in ruling the futility of redaction issue was moot?
3. Did the District Court err when it held Doe's demand for individual privacy in his educational records did not clearly exceed the merits of their public disclosure?
¶3 Because we conclude resolution of the Commissioner's issues is dispositive, we do not reach the additional issues Doe presents for review.
FACTUAL AND PROCEDURAL BACKGROUND
¶4 Krakauer, a writer who chronicled instances of sexual misconduct on or near the University of Montana (the University) campus, seeks the release of Doe's educational records from the Commissioner. The records contain detailed information about student disciplinary proceedings the University initiated against Doe over highly publicized allegations of sexual assault. In Krakauer v. State , 2016 MT 230, 384 Mont. 527, 381 P.3d 524 ( Krakauer I ), we reversed and remanded the District Court's decision ordering the Commissioner to release Doe's records. The *205 instant appeal arises from the District Court's subsequent order on remand; as such, we incorporate the procedural and factual background from Krakauer I , ¶¶ 2-8, and recite the additional facts ***252 that have arisen since.
¶5 In January 2014, Krakauer submitted a request for the release of Doe's educational records to the Commissioner. The Commissioner refused to release the records, asserting state and federal law prevented him from doing so. Krakauer then initiated this action and argued the Commissioner wrongly denied him access to Doe's records, citing the right to know under the Montana Constitution. The District Court granted summary judgment to Krakauer and ordered the Commissioner to release Doe's educational records. The Commissioner appealed, and in Krakauer I , we reversed and remanded the case to the District Court to conduct an in-camera review of Doe's records with the following instructions: (1) determine whether there was an adverse final ruling against Doe during his student disciplinary proceedings, which would have allowed for the release of certain, limited information as an exception to the general prohibition against the release of educational records under the Family Educational Rights and Privacy Act of 1974, as amended, 20 U.S.C. § 1232g (FERPA) ; (2) factor the enhanced privacy interests of students into the analysis of whether the Montana Constitution permits disclosing Doe's educational records; and (3) determine whether the potential for redacting Doe's personally identifying information affects the privacy analysis and the ultimate determination about what records, if any, can be released.
¶6 Following our decision, the District Court granted Doe a motion to intervene in the case. The court then conducted an in-camera review of Doe's educational records. First, the District Court did not make a finding about whether an adverse ruling against Doe existed that would have permitted the release of limited information from Doe's records. Second, although recognizing students' enhanced privacy interests in their educational records, the court found Doe's personal information in the records was already substantially available to the public through unsealed court records and significant media coverage of Doe's contemporaneous public criminal trial. Therefore, it held Doe did not have a subjective or actual expectation of privacy in the records at issue, which rendered the issue of redaction moot. Third, the District Court concluded that even if Doe had a privacy interest in his records, his privacy interest did not clearly exceed the merits of public disclosure due to Doe's status as a high-profile student-athlete at the time of the disciplinary proceedings, the scholarships he received from the University, the attendant publicity of the alleged sexual assault, and the public's compelling interest in understanding the disciplinary procedures employed by a state university.
***253 ¶7 The District Court later denied Krakauer an award of attorney fees. Both the Commissioner and Doe appeal the District Court's order to release Doe's records, and Krakauer cross-appeals the order denying him attorney fees.
STANDARD OF REVIEW
¶8 The Commissioner, Doe, and Krakauer raise issues of constitutional law. "Our review of questions involving constitutional law is plenary. A district court's resolution of an issue involving a question of constitutional law is a conclusion of law which we review to determine whether the conclusion is correct." Krakauer I , ¶ 10 (quoting Bryan v. Yellowstone Cty. Elementary Sch. Dist. No. 2 , 2002 MT 264, ¶ 16, 312 Mont. 257, 60 P.3d 381).
DISCUSSION
¶9 Article II, Section 9, of the Montana Constitution provides the public's right to know: "No person shall be deprived of the right to examine documents ... of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure." We have accordingly recognized "a constitutional presumption that all documents of every kind in the hands of public officials are amenable to inspection ...."
*206 Great Falls Tribune v. Mont. PSC , 2003 MT 359, ¶ 54, 319 Mont. 38, 82 P.3d 876 (citation and emphasis omitted). The right to know is not, however, absolute-it may be overcome when the demands of individual privacy clearly exceed the merits of public disclosure. Mont. Const. art. II, § 9 ; Associated Press, Inc. v. Mont. Dep't of Revenue , 2000 MT 160, ¶ 24, 300 Mont. 233, 4 P.3d 5.
¶10 Article II, Section 10, of the Montana Constitution provides an individual's right of privacy: "The right of individual privacy is essential to the well-being of a free society and shall not be infringed without the showing of a compelling state interest." The right of privacy is also not absolute-it may be infringed upon with the showing of a compelling state interest. Mont. Const. art. II, § 10.
¶11 The rights exist in tension with one another and conflict when the public seeks to examine documents an individual asserts a privacy interest in. Because neither right is absolute, we must balance the competing constitutional rights when they conflict. Missoulian v. Bd. of Regents , 207 Mont. 513, 529, 675 P.2d 962, 971 (1984). "Before balancing these interests, however, [we must determine] more precisely what interests are at stake."
***254 Missoulian , 207 Mont. at 529, 675 P.2d at 971.
¶12 We first determine whether an individual privacy interest exists. Missoulian , 207 Mont. at 529, 675 P.2d at 971. If a privacy interest exists, we then balance "the competing constitutional interests in the context of the facts of each case, to determine whether the demands of individual privacy clearly exceed the merits of public disclosure." Associated Press , ¶ 24 (quoting Missoulian , 207 Mont. at 529, 675 P.2d at 971 ) (emphasis omitted). "[T]he right to know may outweigh the right of individual privacy, depending on the facts." Missoulian , 207 Mont. at 529, 675 P.2d at 971.
¶13 1. Did the District Court err in concluding Doe had no expectation of privacy in his educational records?
¶14 We first consider whether Doe has an expectation of privacy in his educational records. To determine whether a person has a constitutionally protected privacy interest with respect to certain records, we inquire: (1) "whether the person involved had a subjective or actual expectation of privacy"; and (2) "whether society is willing to recognize that expectation as reasonable." Krakauer I, ¶ 36 ; Great Falls Tribune Co. v. Day , 1998 MT 133, ¶ 20, 289 Mont. 155, 959 P.2d 508 (citing Missoulian , 207 Mont. at 522, 675 P.2d at 967 ).
¶15 The Commissioner and Doe argue the District Court erred when it concluded Doe has no subjective or actual expectation of privacy in his educational records because all students have an enhanced privacy interest in their educational records. Krakauer counters that Doe has no subjective or actual expectation of privacy in his educational records because: first, the University's Student-Athlete Conduct Code put Doe on notice his status as a student-athlete meant he would be "more visible" in the community, more "scrutinized" by the media, and he may have diminished "individual rights and privileges"; and second, the public already knows many private details contained in Doe's educational records, and thus, Doe cannot honestly assert an existing privacy interest in them.
¶16 In Krakauer I , we recognized a student's privacy interest in his educational records was different from "general privacy interests," and "courts must honor the unique privacy protection legislatively cloaked around the subject records by factoring that enhanced privacy interest into the balancing test." Krakauer I , ¶ 37. We recognized there was an "increased burden that must be shown by a petitioner in order to access protected student records ...." Krakauer I , ¶ 37. We also noted in Krakauer I , federal and state statutes affirmatively establish heightened privacy interests for students in their educational records ***255 as a matter of law. Krakauer I , ¶ 37. This legislatively-cloaked, enhanced privacy protection is an important factor to consider in an analysis of a particular student's privacy interest in his educational records.
¶17 Although we recognized in Krakauer I a student has a statutorily-protected, enhanced privacy interest, that protection does not mean the interest is absolute *207 when balanced against a competing constitutional interest. Indeed, § 20-25-515, MCA, which requires a student's permission before his records may be released, provides an exception when a court has issued a subpoena for the records. In requiring intervention and consideration by a court for issuance of a subpoena, the statute ensures a court will make the necessary constitutional inquiry and balancing when a student does not consent to disclosure. Such an inquiry would, for example, adequately address the situation where a student published his educational records himself or otherwise consented to their disclosure, thereby inviting a court to find the student-even with the enhanced protection afforded all students under the law-did not have an actual privacy interest in his records. Accordingly, a court must still determine whether a student has an actual privacy interest in his records based on the facts of the case. Where the court finds the privacy interest exists, the enhanced protection creates a robust protection in favor of individual privacy when weighed against the merits of public disclosure. See Mont. Const. Art. II, § 9 ; Krakauer I , ¶ 37.
¶18 To determine whether Doe has an expectation of privacy in his educational records, we first consider whether Doe has a subjective or actual privacy interest in his educational records. See Krakauer I, ¶ 36. We begin by observing the Court recently held in Raap v. Bd. of Trs. , 2018 MT 58, ¶ 12, 391 Mont. 12, 414 P.3d 788, whether a person has an actual or subjective expectation of privacy in certain records is a question of fact informed by notice. If the person had notice his records were subject to public disclosure or the public entity already made them publicly available, then he cannot have an actual or subjective expectation of privacy in the records. Raap , ¶ 12 ; Billings Gazette v. City of Billings , 2013 MT 334, ¶ 18, 372 Mont. 409, 313 P.3d 129 ; Havre Daily News, LLC v. City of Havre , 2006 MT 215, ¶ 23, 333 Mont. 331, 142 P.3d 864.
¶19 Here, the same statutes that provide students with additional privacy protections also provide students with notice of the very limited circumstances upon which a university may disclose their educational records to third parties, including the public at-large.
***256 Section 20-25-515, MCA, permits the public release of educational records only through a student's written permission or through a court subpoena. FERPA limits the non-consensual public release of educational records to a few exceptions. For example, under 20 U.S.C. § 1232g(b)(6)(B), an institution may disclose limited information about the final results of a disciplinary proceeding against a student who is an alleged perpetrator of a crime of violence or a nonforcible sex offense, "if the institution determines as a result of that disciplinary proceeding that the student committed a violation of the institution's rules or policies with respect to such crime or offense."[1] A court may also order an institution to turn over educational records or publicly disclose them through a court order or subpoena.[2] 20 U.S.C. § 1232g(b)(2)(B).
¶20 The University of Montana Student Conduct Code also guarantees all students a right to confidentiality with respect to disciplinary proceedings. The Student Conduct Code notifies students that disciplinary proceedings are closed to the public; the University will not disclose related information to anyone not connected to the proceeding; while the University may disclose the fact that there is a disciplinary proceeding, the identity of individual students will remain confidential; and the University will disclose the results of the proceedings only to an alleged victim of a violent crime and "to those who need to know the results for purposes of record-keeping, enforcement of the sanctions, further proceedings, or compliance with Federal or State law."
¶21 *208 Taken together, these statutes and policies indicate Doe did not have notice his educational records would be subject to public disclosure by the University. Quite the opposite, the statutes and policies provide students like Doe with steadfast assurances that the university system will affirmatively protect their records from disclosure, just as the University and the Commissioner have done here. Doe had notice the University could only disclose the results of his disciplinary proceedings to an alleged victim, essential University ***257 personnel, or other necessary individuals in compliance with federal or state law, which would include compliance with a judicial order or subpoena.[3] See 20 U.S.C. § 1232g(b)(2)(B) ; § 20-25-515, MCA. The University did not have a policy of disclosing educational records. In fact, absent Doe's consent or a judicial subpoena, the University could only disclose specific information from Doe's records in limited circumstances. Accordingly, Doe did not have notice his educational records were publicly available or the University would possibly publicly disclose them.
¶22 Krakauer points to the University's Student-Athlete Conduct Code-a separate policy from the Student Conduct Code that applies only to student-athletes-and argues language in the Student-Athlete Conduct Code notified Doe of possible disclosure of his records. In pertinent part, Krakauer points to the following selections:
Being a student-athlete carries with it certain expectations, many that you would not experience if you were not a student-athlete. Because of the public nature of competition, you are more visible to the community than a non-student-athlete.
...
Past student athletes have learned that their actions are scrutinized more closely by the press. You should conduct yourself with that knowledge.
...
By virtue of becoming a member of an athletic team, however, you become subject to certain responsibilities and obligations which could include the acceptance of loss of some individual rights and privileges.
¶23 Krakauer's argument that the Student-Athlete Conduct Code somehow diminishes student-athletes' right of privacy is fundamentally flawed. Section 20-25-512, MCA, forbids contracts between a university and a student waiving the student's right of privacy and due process of law. Even so, nowhere does the Student-Athlete Conduct Code notify student-athletes their educational records are subject to public disclosure by the University, ***258 nor does it attempt to minimize or eliminate their right of privacy. If anything, the passages from the Student-Athlete Conduct Code serve only as a warning to student-athletes that their status as an athlete may subject them to greater scrutiny from both the University and the public at-large. Moreover, neither Montana nor federal laws distinguish between types of students entitled to a right of privacy. All students-regardless of their success in academics or athletics, their involvement in campus or community organizations, or their general prominence or popularity-have an enhanced privacy interest in their educational records.
¶24 Krakauer further urges us to conclude, as the District Court did, that the public's knowledge of a substantial amount of Doe's private information in his educational records weighs against Doe asserting a privacy interest in them. Krakauer points to the fact that Doe's personal information contained in the records was already substantially available to the public through unsealed court records and significant national media coverage of Doe's public criminal trial.
¶25 The public's independent knowledge of certain information contained in a student's private educational records does not in any way diminish, let alone eviscerate *209 as claimed by Krakauer, a student's actual or subjective expectation of privacy in his records. See Montana Human Rights Div. v. Billings , 199 Mont. 434, 441-42, 649 P.2d 1283, 1287 (1982) (holding, while information contained in certain private records may already be a matter of general knowledge, the records may still contain "damaging information which the individuals involved would not wish and in fact did not expect to be disclosed"). An individual can maintain an expectation of privacy in his private records even in the face of the public's knowledge of their contents. See Missoulian , 207 Mont. at 525, 675 P.2d at 969 ("[N]early all private matters contain some component of innocuous information or general knowledge. However, that component does not transform private matter into public."). Public knowledge of a student's private information cannot efface or diminish the student's expectation of privacy. To hold otherwise would allow the public to defeat a significant privacy interest in certain records simply because the public has learned of the records' contents through other means.[4] ***259 ¶26 Krakauer also contends our decision in Svaldi v. Anaconda-Deer Lodge Cty. , 2005 MT 17, 325 Mont. 365, 106 P.3d 548, indicates media publicity is a proper factor to consider in the privacy analysis. In Svaldi , a prosecutor told a newspaper about a potential deferred prosecution agreement with a local teacher whom the state accused of assaulting students, and the prosecutor sent the newspaper the teacher's initial offense report. Svaldi , ¶ 10. The teacher sued the county for damages, alleging the prosecutor's conversation with the newspaper violated her privacy rights under the Criminal Justice Information Act. Svaldi , ¶¶ 11, 14. We balanced the teacher's right of privacy in the initial offense report with the public's right to know the report's contents, ultimately concluding the teacher's demand of individual privacy in the initial offense report did not clearly exceed the public's right to know the report's contents. Svaldi , ¶¶ 28-31. We also noted how the public's prior knowledge of the allegations against the teacher weighed against her claim that her privacy rights were violated in the first place. Svaldi , ¶ 32.
¶27 Svaldi , however, is distinguishable. First, the public-school teacher held a position of public trust and was accused of a crime that went directly to her ability to properly carry out her public duties-the care and instruction of children. Doe, as a student, was not in a position of public trust, and therefore society is more willing to accept his privacy interest in his educational records as reasonable. Second, in Svaldi , ¶ 32, our discussion about the fact that the public already knew the information the prosecutor disseminated explained our conclusion that the prosecutor did not violate the teacher's right of privacy or negligently breach a duty owed to her regarding that right. Doe has not sued the Commissioner over a violation of his right to privacy. Consequently, Svaldi 's discussion about the public's knowledge is distinguishable.
¶28 In this case, the public has already learned substantial portions of Doe's educational records through other means-unsealed court records, the media, and even Krakauer's own investigation and novel. However, information contained in a student's educational records is broader than that offered during a public criminal trial, which is governed by rules of evidence, burdens of proof, and constitutional protections not applicable to educational records. The District Court fundamentally erred by holding the public's knowledge of the personal information in Doe's records negated his expectation of privacy in ***260 them. Based on FERPA, § 20-25-515, MCA, the University's Student Conduct Code, and the facts of this case, Doe demonstrated he had an actual expectation of privacy in his educational records, and he did not have notice of possible public disclosure of those records. We accordingly conclude Doe had an actual or subjective *210 expectation of privacy in his educational records.
¶29 Turning to the second part of the privacy inquiry, we next consider whether society is willing to recognize Doe's expectation of privacy in his educational records as reasonable. See Krakauer I, ¶ 36. We have long held society is less willing to recognize as reasonable the privacy expectation of an individual who holds a position with a high level of public trust when the information the public seeks bears on that individual's ability to perform public duties, such as spending public money or educating children. Billings Gazette , ¶ 49. Unlike a student's enhanced privacy interest, such individuals have a reduced privacy interest. See Svaldi , ¶ 31 (concluding that a public school teacher held a position of public trust and the allegations against her-an assault against a student-went directly to her ability to carry out her duties; accordingly, there was no requirement to withhold the allegations against the teacher from public scrutiny); Bozeman Daily Chronicle v. City of Bozeman Police Dep't , 260 Mont. 218, 227, 859 P.2d 435, 440-41 (1993) (investigative documents associated with allegations of sexual intercourse without consent by an off-duty police officer were proper matters for public scrutiny because "such alleged misconduct went directly to the police officer's breach of his position of public trust ..."); Great Falls Tribune Co. v. Cascade Cty. Sheriff , 238 Mont. 103, 107, 775 P.2d 1267, 1269 (1989) ("[L]aw enforcement officers occupy positions of great public trust. Whatever privacy interest the officers have in the release of their names as having been disciplined, it is not one which society recognizes as a strong right.").
¶30 The District Court found Doe was a high-profile student-athlete who enjoyed a position of prominence and popularity and who received "valuable consideration for his skills in the form of an athletic scholarship." The court stated, "Although he is not a public official or university employee, Doe is a public representative of the University of Montana." However, even a student who is a "public representative" of a university plainly does not occupy a position of public trust. Doe was not, for example, a law enforcement officer, teacher, or government ***261 official, nor was he charged with performing public duties.[5] Doe was a student. Even if, as Krakauer suggests, his popularity benefited both the University and himself (and even though Doe was an especially prominent sports figure), Doe simply was not a public official; as a student, he was entitled to an enhanced privacy interest in his educational records. Were we to expand the group of public officials having a reduced privacy interest to include, as suggested here, any student in whom the public is interested, the enhanced student privacy interest would be rendered meaningless. Statutes enacted by our legislature embody public policy. The federal and state statutes providing enhanced privacy protections support the idea that society is willing to recognize Doe's privacy expectation is reasonable.
¶31 Accordingly, we conclude society is willing to recognize as reasonable Doe's actual or subjective expectation of privacy in his educational records. Our decision is rooted in federal and state laws, the University's policies safeguarding students' privacy rights, and our conclusion that Doe neither holds a position of public trust nor performs public duties. The District Court erred when it held Doe did not have a privacy interest in his educational records. We conclude he does.
¶32 2. Did the District Court err in ruling the futility of redaction issue was moot?
¶33 In the past, we have recognized redacting individuals' names while disclosing records to the public can sufficiently protect their privacy interests while still allowing disclosure of relevant public information. Yellowstone Cty. v. Billings Gazette , 2006 MT 218, ¶¶ 24-25, 333 Mont. 390, 143 P.3d 135 (citing *211 Worden v. Montana Bd. of Pardons and Parole , 1998 MT 168, ¶ 29, 289 Mont. 459, 962 P.2d 1157 ). When appropriately employed, redaction offers a means for disclosing relevant public information while protecting a privacy interest. However, in Krakauer I we cautioned that redaction cannot adequately protect privacy interests in every instance: "[W]hen an educational institution is asked to disclose education records about a particular person, then no amount of redaction in the records themselves will protect the person's identity because the requestor ***262 knows exactly whom the records are about." Krakauer I , ¶ 38 (internal quotations and alterations omitted). Consequently, on remand, we required the District Court to consider whether redaction was futile and the impact it would have on the court's decision to release Doe's records. Krakauer I , ¶ 38.
¶34 The District Court did not make a clear determination about whether redaction was futile. It held the question was moot because it concluded Doe had no privacy interest in his records. Nevertheless, the District Court opined that if redaction was futile, "then there are no practical differences between releasing redacted and unredacted documents." Although the District Court's supposition is technically correct, we disagree with any resulting implication that the futility of redaction weighs in favor of releasing private records. Where redaction is futile-i.e., where redaction cannot protect individual privacy interests-that futility cannot weigh in favor of releasing the private records.
¶35 Based on Doe's educational records and the District Court record before us, we conclude redacting Doe's personal information from his records is futile and would not serve to protect the enhanced privacy interest he has in those records. Krakauer asked for Doe's records by name. His request was to
inspect or obtain copies of public records that concern the actions of the Office of the Commissioner of Higher Education in July and August 2012, regarding the ruling by the University Court of the University of Montana in which [Doe][6] was found guilty of rape and was ordered expelled from the University.
Krakauer could have requested information about the process by which the University or the Montana University System generally handle sexual assault or how the Commissioner reviews appeals of student disciplinary proceedings. He could have requested general information about all sexual assault complaints over an appropriate, specified period of time, and he could have requested information about the appeals the Commissioner reviewed over that time. Had Krakauer done so, the Commissioner, under the appropriate circumstances, could have responded by supplying the appropriate records with each student's personally identifying information redacted to protect his or her privacy interests. But Krakauer requested information pertaining to one specific student, and now, no amount of redaction can protect ***263 that student's privacy interests.[7] Were Krakauer to receive Doe's records, there would be no doubt to whom the records pertained. Therefore, Doe's privacy interest in his educational records, which is enhanced, reasonable, and weighs heavily in favor of nondisclosure to begin with, receives no protection at all in the constitutional inquiry and balancing because redaction is futile.
¶36 3. Did the District Court err when it held Doe's demand for individual privacy in his educational records did not clearly exceed the merits of their public disclosure?
¶37 Having determined Doe has an actual privacy interest in his records which is *212 reasonable but redaction is futile, we now balance Doe's privacy interest with the public's right to know the records' contents to determine whether Doe's "demand of individual privacy clearly exceeds the merits of public disclosure." Mont. Const. art. II, § 9. Unlike in Krakauer I , we now have Doe's educational records before us. We have reviewed Doe's records and are prepared to determine whether the District Court erred when it held Doe's demand for individual privacy in his educational records did not clearly exceed the merits of their public disclosure.
¶38 Although the District Court held Doe does not have an actual privacy interest in his educational records, it nonetheless applied the balancing test to the facts of the case. It held the four following factors weighed against Doe's right to privacy and in favor of the public's right to know: (1) Doe's status as a high-profile student athlete; (2) athletic scholarships Doe receives from the University, a public institution; (3) the public's knowledge about the details of the allegations against Doe; and (4) the public's interest in understanding the disciplinary procedures employed by the University, especially where Doe is a prominent and popular campus figure whose education is paid for in-part by public funds. We disagree with the District Court's ***264 balancing analysis.
¶39 After balancing the public's right to know the information contained in Doe's records with Doe's right of privacy, we conclude the demand of Doe's privacy clearly exceeds the merits of public disclosure.
¶40 The public's Article II, Section 9, right to know the information contained in Doe's records is weighty. The records are documents "in the hands of public officials" and, accordingly, there exists a constitutional presumption that the records are amenable to public inspection. See Great Falls Tribune v. Mont. PSC , ¶ 54. Just as we did in Krakauer I , we recognize the Montana University System's policies in responding to and handling complaints of alleged sexual assault are matters of high importance and concern to the public. Krakauer I , ¶ 35. The University's compliance with its federal obligations under Title IX is also a matter of public import and interest. Key to our democracy is the public's ability to understand the process and the reasoning employed by government officials like the Commissioner. We accordingly recognize the strong public interest in knowing how universities address allegations of sexual assault.
¶41 However, Doe's Article II, Section 10, right of privacy in his records is also weighty-federal and state law uniquely and affirmatively protect and enhance Doe's privacy interest in his educational records. Doe's enhanced protections establish an exceptional demand of individual privacy. The student privacy laws do not discriminate between subjective classifications of students-all students have an enhanced privacy interest. Doe's status as a high-profile student athlete does not diminish his enhanced privacy interest in his educational records. Further, a student who receives a scholarship, as alleged here[8] -even a publicly-funded scholarship-does not waive or diminish his enhanced privacy interest in his educational records. Doe has continuously asserted a privacy interest in his records, even going so far as to intervene to protect his interest and proceed under an anonymous pseudonym. There is no doubt that Doe's enhanced privacy interest touches every aspect of his records, as the records themselves contain extensive details about the allegations against him, the evidence the University gathered, and Doe's disciplinary proceedings.
¶42 Moreover, the University's student disciplinary proceedings are confidential-each participant swears to keep the proceedings private.
***265 Unlike a public criminal trial, student disciplinary proceedings do not provide the same procedural due process protections afforded to criminal defendants because the proceedings exist to protect a university's primary function-the education of students-and regulate the relationship between student and university. The information presented in a student disciplinary proceeding is often broader than that in a public criminal *213 case and, thus, there is a greater need to keep the information presented confidential. The confidential nature of the proceedings also allows the University to promote candor with the students involved and to encourage victims to come forward where they might otherwise feel reluctant to endure the public scrutiny inherent in a public criminal trial.
¶43 We therefore recognize the strong merits of publicly disclosing information pertaining to the University's handling of sexual assault allegations, but we must also "honor the unique privacy protection legislatively cloaked around the subject records ...," Krakauer I , ¶ 37, Doe's continued defense of his privacy interest, and the necessity to maintain confidentiality for student disciplinary proceedings. Accordingly, under the particular facts of this case, we conclude Doe's demand of individual privacy clearly exceeds the merits of public disclosure.
¶44 A student's privacy rights are not absolute, and whether disclosure is warranted will depend on the facts of each case. Where educational records may be redacted to prevent disclosure of personally identifiable information or other measures taken to ensure that personally identifiable information remains confidential, the demand for the student's privacy may not clearly exceed the merits of public disclosure. Here, a more generalized request for information and one in which the Commissioner could have redacted Doe's information in a manner that would have protected his privacy interest may have allowed for public disclosure. However, as we stated above, redaction will not sufficiently protect Doe's privacy interest.
¶45 We do not foreclose the possibility that the necessity behind a request for a specific student's educational record-even where redaction is futile-could overcome the student's privacy interest in the record. For example, a party might require the information in an educational record because the information is essential for prosecuting or defending a lawsuit where the primary issue is not public disclosure of the educational record itself. In Catrone v. Miles , 215 Ariz. 446, 160 P.3d 1204, 1207-08, 1210-12 (Ariz. Ct. App. 2007), Andrew Catrone filed a malpractice suit against medical providers alleging negligence when his son, Patrick, was born with neurobehavorial problems, sensory ***266 motor deficits, hearing loss, and impaired cognitive functions. Patrick's brother, Austin, was born of the same parents approximately one year before Patrick and suffered the same learning disabilities. In support of the theory that Patrick's impairments were genetic rather than the result of malpractice, the medical providers sought Austin's special educational records. Although the request for educational records was specific to Austin, the court allowed disclosure of Austin's educational records with redactions for privileged information and a requirement that the parties agree on the terms of a protective order. Similarly, in Ragusa v. Malverne Union Free Sch. Dist. , 549 F. Supp. 2d 288, 290, 293-94 (E.D.N.Y. 2008), Ragusa, a high school mathematics teacher, filed an employment discrimination action and sought educational records to show special education students in her classes had increased and the students reached their goals under her tutelage. The court explained that the records were relevant to Ragusa's claim and ordered the records released with personally identifiable information redacted.
¶46 Krakauer's assertion of his constitutional right to know must be seen for what it is: Krakauer is only interested in Doe's educational records because Doe is a high-profile athlete. Krakauer wants to know if the Commissioner showed favoritism towards Doe in the handling of Doe's sexual assault investigation because of that status. Krakauer's right to know the records' contents exists in direct tension and conflict with Doe's right of privacy in his educational records. Krakauer's request for Doe's records is premised solely upon Doe's status as a high-profile athlete for the University. By making a specific request for Doe's records, Krakauer made it clear that he is not interested in the Commissioner's handling of sexual assault investigations generally; he is interested in only the Commissioner's handling of Doe's investigation because Doe is a high-profile athlete. Were we to find this a basis for disclosure, the right to know would always subsume the privacy interest, making the *214 student's enhanced privacy interest always subject to the whim and caprice of public sentiment. Krakauer does not overcome Doe's enhanced privacy interest by demonstrating the public has an interest in how the Commissioner handled this particular investigation. The Commissioner's report is still about Doe, and Doe, under the law, is entitled to be treated the same as any other student.
CONCLUSION
¶47 Where a court finds a privacy interest exists, the student's enhanced privacy interest manifests a powerful "demand of individual privacy," when balanced against the public's right to know. See Mont. Const. art. II, § 9. Furthermore, the public's knowledge of portions of ***267 a student's private records does not justify public disclosure by diminishing or effacing the student's actual or subjective expectation of privacy in the records. Finally, when redacting certain identifying information is futile, the futility of redaction does not favor public disclosure. The futility of redaction leaves the enhanced and weighty privacy interest of a student unprotected.
¶48 Doe has an enhanced privacy interest in his educational records based on the federal and state laws protecting his privacy rights. He has an actual or subjective expectation of privacy in his educational records because he did not have notice his records were subject to possible release by the University, even if some of the information was already public knowledge. His expectation of privacy is one that society is willing to recognize as reasonable. Moreover, Doe's demand of individual privacy in his records clearly exceeds the merits of public disclosure. Accordingly, we reverse the District Court's decision ordering the Commissioner to release Doe's records and dismiss Krakauer's petition with prejudice. Because Krakauer is not the prevailing party in this action under § 2-3-221, MCA, we affirm the District Court's decision not to award Krakauer attorney fees.
¶49 Reversed in part and affirmed in part.
We concur:
JAMES JEREMIAH SHEA, J.
DIRK M. SANDEFUR, J.
INGRID GUSTAFSON, J.

In Krakauer I , we noted the possibility that this exception applied. Krakauer I , ¶ 26. The District Court did not consider it on remand and, accordingly, we do not address it on appeal.

As we observed in Krakauer I , ¶ 27 n.6, FERPA and its corresponding regulations require courts to give advance notice to students or parents before issuing a subpoena or order that might release a student's records so that the students or parents "may seek protective action ...." 34 C.F.R. § 99.31(a)(9)(ii) ; see 20 U.S.C. § 1232g(b)(2)(B).

An individual has notice of possible disclosure of his records only when he knows the public entity holding his records may freely disclose them to the public. For example, notice that a university may disclose educational records to other discrete entities, such as an alleged victim or essential university personnel, is not notice of possible public disclosure for purposes of the rule. Similarly, notice of potential court-ordered public disclosure is not sufficient notice of possible public disclosure where the university would not (or could not) disclose the student's records, but for the judicial order.

However, if the person claiming a privacy interest was the one who initially released the record to the public, a court may conclude, after examining the facts, the person's expectation of privacy in the information is necessarily diminished. That is not the case here. Doe did not disseminate information contained in his educational records, and he neither initiated nor had control over the media coverage of his case.

The District Court found Doe received an athletic scholarship from the University. The record contains little evidence about Doe's finances, but even if he did receive an athletic scholarship, and even if that scholarship was publicly-funded (the Commissioner asserts it most likely would not be), a student who receives a scholarship-even a publicly-funded one-does not occupy a position of public trust. Nor is the student charged with performing public duties.

This alteration is ours. Krakauer asked for Doe's records using Doe's legal name and not an anonymous pseudonym.

This is also the case under FERPA. FERPA prohibits institutions from releasing educational records or personally identifiable information contained therein without written consent. 20 U.S.C. § 1232g(b)(1). In the definition of Personally Identifiable Information , the regulations include "[i]nformation requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." 34 C.F.R. § 99.3 (Personally Identifiable Information at (g)). Where the public requests a student's records by name, FERPA's regulations assume the information sought would allow the public to personally identify the student. Therefore, the regulations prohibit universities from releasing a student's information, even redacted, when a requestor specifically asks for a student's information by name. See 39 C.F.R. § 99.3(g); see also Krakauer I , ¶ 24.

The record before us does not indicate whether Doe received a scholarship at the time of his disciplinary proceedings or how that scholarship was funded.